*In the matter of the Petition of* HANNAH CAMERON *for a Writ of Habeas Corpus.*

FALSE PRETENSES — *No Conviction under the Statute.* Where A, the agent of B, obtains personal property belonging to B, by means of false statements, from C, and it appears that neither A nor B intended to defraud C, and the false statements were made by A to enable B to obtain the property that belonged to him, and to the immediate possession of which he is entitled, A cannot be convicted, under the statute, of obtaining property by false pretenses.

*Original Proceeding in Habeas Corpus.*

PETITION filed in this court on April 21, 1890. The material facts appear in the opinion, filed on June 7, 1890.

*J. W. Rose,* for petitioner.

*W. H. Robb,* county attorney, contra.

The opinion of the court was delivered by

HORTON, C. J.: The petitioner, Hannah Cameron, alleges that she is illegally restrained of her liberty by the sheriff of Edwards county, under a warrant issued on the 27th day of

March, 1890, by J. Kenneck, a justice of the peace of that county, charging her with having unlawfully, feloniously, and designedly, by false pretenses, obtained from George W. Crawford an organ of the value of $95.

It appears from the agreed statement of facts that Crawford had purchased, in November, 1888, an organ from Mrs. Cameron, who acted as agent; that he had made a cash payment upon the organ, and gave two promissory notes for the deferred payments. The notes were so executed that the payee was entitled to take possession of the organ at any time, if Crawford failed to pay as the notes matured, or if he undertook to remove the organ from the place where it was. It also appears that he paid upon the organ sums aggregating $66; that at the time Mrs. Cameron came for the organ, on January 8, 1890, there was due upon the last note between $35 and $40; that she stated to him "she was the agent of the Western Temple of Music, of which S. R. Huyett was the general manager; that the company had sent her to take the organ on account of the non-payment of the last note; that she would take the organ to her house, at Macksville, in this state, a few miles distant from where Crawford lived, and that he could have the organ at any time by making payment"; that Crawford relied upon these statements, and surrendered the possession of the organ to Mrs. Cameron. Soon afterward, Crawford went to Macksville to see Mrs. Cameron and make the last payment, but found the organ had been taken to Hutchinson, in this state. It further appears, however, that although Mrs. Cameron had been acting as agent for the Western Temple of Music for about two years, and had sold several organs for the company, that the one purchased by Crawford belonged to her daughter, Mrs. Ursula Searles; that she sold the organ to Crawford as the agent of Mrs. Searles; that after the last note was overdue, at the request of her daughter and as her agent she obtained possession of the organ from Crawford, who was then in default upon the last note for an amount exceeding $30. It also appears that Mrs. Cameron believed at the time she went to Crawford's for the

5 — 44 KAS.

organ, that he was about to remove with his family to Texas, and take the organ with him.

According to all the testimony, the conditions of the last note which Crawford had executed for the organ were not complied with. It is also conceded that the holder of the note, under its terms was entitled to the possession of the organ upon default of payment, or if the purchaser undertook to remove the organ from the place where it was. Upon the facts as disclosed by the testimony, Mrs. Cameron has not been guilty of any public offense. Her daughter, Mrs. Searles, was legally entitled to the possession of the organ at the time that Mrs. Cameron made the demand for it. It is true, according to the testimony of Mr. Crawford, that she made false statements concerning the Western Temple of Music, and the order alleged by her to have been given by S. R. Huyett, its general manager; but nothing is a false pretense, within the terms of the statute, which has no tendency to and does not harm a person. It is not an indictable offense, under the statute, for one to obtain by false statements payment of a debt already due, or personal property to the possession of which he is entitled, because no injury is done.

In *People v. Thomas*, 3 Hill, 169, the defendant was charged with obtaining property by false pretenses, the fraudulent pretense being that a note of the prosecutor which he had for the amount had either been lost or burned, which was known by him to be false; and afterward he negotiated the note to a third person. The court held that the false representation, tending merely to induce one to pay a debt previously due from him, was not within the statute against obtaining property by false pretenses, the court saying: "A false representation by which a man may be cheated into his duty is not within the statute." And in *Commonwealth v. Henry*, 22 Pa. St. 253, Woodward, J., makes use of almost precisely the same language.

In this case, Mrs. Searles was entitled to the possession of the organ. Her mother obtained that possession by false statements; but as Crawford was not entitled to the posses-

sion of the organ, and Mrs. Cameron obtained it for her daughter and at her daughter's request, no injury was done to Crawford or anyone else, and Crawford cannot complain. No crime or offense was committed. (Crimes Act, § 94; 1 Bishop on Crim. Law, 7th ed., §§ 438, 466; *Commonwealth v. Duffy*, 126 Mass. 467; *The State v. Hollyway*, 41 Iowa, 200; *The State v. Hurst*, 11 W. Va. 54.)

If Mrs. Cameron had sold the organ to Crawford as the agent of the Western Temple of Music and not as the agent of her daughter, Mrs. Searles, yet, if at the time she made the demand the notes given by Crawford had not been paid, Crawford had no right to hold or retain possession of the organ. Upon default in failing to pay the notes, or any of them, the payee thereof, not Crawford, was entitled to the possession of the organ. If the testimony of the prosecution is all true, Mrs. Cameron was guilty of statements contrary to the truth and good morals, but she has not rendered herself criminally liable.

It appears from the testimony that Mrs. Cameron was discharged by the probate judge of Stafford county, in this state, upon a writ of *habeas corpus*, on the 5th day of February, 1890; that a full hearing was had of the matters in controversy before the probate judge, and that we are now asked to rule that the determination of the probate judge is final and conclusive, notwithstanding the filing of a subsequent complaint, and the arrest thereon. In view of the conclusion we have reached, that Mrs. Cameron is not guilty of any offense or crime, we deem it unnecessary to pass upon the question so forcibly presented.

The petitioner will be discharged.

All the Justices concurring.