Argued at Pendleton October 26, affirmed December 22, 1925.

## STATE *v.* ARCHIE CODY.

(241 Pac. 983.)

Homicide — Admission of Conversations Between Witnesses Leading Up to Issuance of Warrant for Arrest of Accused Prior to His Killing of Sheriff Held not Prejudicial.

1. Admission of conversations between witnesses leading up to issuance of warrant for arrest of accused prior to his killing of sheriff *held* not prejudicial, where accused admitted that he submitted to arrest when informed by sheriff there was a warrant for him.

Homicide—Information Held to Charge a Felony as Affecting Right
   of ·Deceased to Arrest Accused Without Warrant.

2.   As respects sheriff's right to arrest accused without having
warrant in his immediate possession, an information charging ac-
cused with obtaining goods by false pretenses, under Section 1964,
Or. L., the false pretenses being accompanied by a check drawn on
a bank in which accused had no funds, *held* to charge a felony,
and not a misdemeanor, although the information charged the lesser
crime of uttering a check on a bank where the maker of the checks
was without funds, under Section 1964—1.

False Pretenses—Party, Obtaining Horses by Giving to Seller Check
   on Bank in Which He had No Funds, was Guilty of Obtaining
   Horses by "False Pretenses."

3.   Party, obtaining horses by giving to seller check on bank in
which he had no funds, was guilty of obtaining horses by false
pretenses as defined in Section 1964, Or. L., as distinguished from
offense of uttering a check on a bank in which the maker has no
funds, within Section 1964—1 to which Section 1541 does not
apply.

Homicide—Admission of Testimony as to Representations of Ac-
   cused When Obtaining Goods for Worthless Check Held not
   Error.

4.   In prosecution for killing a sheriff when arresting accused on
a charge of obtaining goods by false pretenses, accompanied by a
check on bank in which accused had no funds, admission of testi-
mony that accused represented when he gave the check that he
had money in the bank *held* not error, where accused admitted
giving the check for the goods without having funds in the bank.

Arrest — Sheriff Held Authorized to Arrest Accused in Another
   County Without Warrant. .

5.   Under Sections 1763, 1768, Or. L., where sheriff was informed
that accused was charged with having committed a felony, and had
reason to believe accused had committed the crime, he was author-
ized to arrest accused, though he had no warrant, and was not in
the county of which he was sheriff at the time.

Arrest—Person Submitting to Arrest cannot Thereafter Complain
   Person Arresting Him had No Warrant.

6.   Person submitting to arrest cannot complain that person ar-
resting him had no warrant, in view of Section 1757, Or. L.

Criminal Law — Court is not Required to Give Requested Instruc-
   tions in Language Asked, Although It Correctly States Law.

7.   Court is not required to give requested instructions in lan-
guage asked, although it correctly states law, but should instruct
the jury fairly and impartially regarding theory of both parties
when the evidence justifies such action, and he may do this in his
own language and order.

5.   See 2 R. C. L. 469, 470.

**Homicide — Instruction on Presumption of Intent from Use of Deadly Weapon Held Proper.**

8. Under Section 798, subdivision 1, Or. L., instruction upon the statutory presumption of intent to murder from deliberate use of deadly weapon, *held* correct.

**Criminal Law—Refusal to Strike Out Unresponsive Answer of Witness Held Proper as Having Been Invited by Accused.**

9. In prosecution for killing a sheriff when arresting accused, where it appeared certain persons in a near-by house, including a witness went into a cellar when they anticipated shooting, counsel for accused, on cross-examination, and over state's objection, asked witness whether accused had shown in his attitude anything indicating malice or any disposition to injure witness, to which witness replied that accused's attitude "was an attitude of injury to some one in my mind," whereupon counsel for accused moved to strike the answer as unresponsive, *held* that motion was properly denied, since accused invited the answer.

**Homicide—Instructions on Self-defense Held Sufficient.**

10. In prosecution for killing a sheriff when arresting accused, where the defense was self-defense, and state's theory was that accused, though originally submitting to arrest, thereafter shot sheriff to escape from him, instructions given on self-defense *held* sufficient.

**Homicide—Defendant's Introduction of Considerable Testimony Regarding His Mental Capacity Justified Instruction on Insanity.**

11. Defendant's introduction of considerable testimony regarding his mental capacity *held* to justify instruction on defense of insanity.

**Criminal Law—Statements of Accused to Members of Posse, Capturing Him After Shooting Affray, Held Admissible as Evidence Against His Interest.**

12. Statements of accused to members of posse, capturing him after shooting affray, *held* admissible as evidence against his interest.

**Homicide—Evidence Held Sufficient to Justify Verdict of Murder in First Degree.**

13. Evidence *held* sufficient to justify verdict of murder in first degree.

**Criminal Law—Supreme Court may not Interfere With Verdict Supported by Material Evidence.**

14. Supreme Court may not interfere with verdict supported by material evidence, in view of constitutional inhibition.

Arrest, 5 C. J., p. 396, n. 33 New, p. 399, n. 78, p. 417, n. 5.
Criminal Law, 16 C. J., p. 553, n. 73, p. 827, n. 18, p. 883, n. 15, p. 963, n. 18, p. 1034, n. 46, p. 1068, n. 3; 17 C. J., p. 255, n. 55.
Homicide, 30 C. J., p. 140, n. 50, p. 310, n. 25, p. 336, n. 79, p. 371, n. 34.
Sheriffs and Constables, 35 Cyc., p. 1528, n. 15.

From Malheur: DALTON BIGGS, Judge.

In Banc.

Archie Cody, the above-named defendant, was indicted by the grand jury of Malheur County on the third day of September, 1924, charged with the crime of murder in the first degree for killing Austin Goodman in said county on the twenty-seventh day of August, 1924. The deceased was at that time sheriff of Harney County. The defendant was tried in December, 1924, and convicted of the crime charged in the indictment and sentenced to be hanged. On the evening of August 24, 1924, the defendant and George Prince called at the home of Cawlfield in Harney County and remained overnight. While there the defendant purchased from said Cawlfield two horses giving in payment therefor a check signed by the defendant under the name of Fried Yerdlow on a bank at Elko, Nevada, for the sum of $125. Cawlfield became suspicious that the check might not be good, and on the same day went to Crane in said county and had a banker there wire the bank at Elko regarding the check and was informed that the check was worthless. Thereupon said Cawlfield called up the District Attorney of Harney County and notified him by phone of the transaction. The District Attorney thereupon prepared and verified an information before the Justice of Peace of Burns, Oregon, charging the defendant with the crime of obtaining goods by false pretenses. A warrant was duly issued by said Justice of the Peace commanding the sheriff to arrest the defendant. At that time the sheriff was in the southern part of Harney County and the warrant was delivered to his son and deputy sheriff

for service. On the same day the sheriff, Austin Goodman, stopped at the home of said Cawlfield on his way to Burns and was informed by Mrs. Cawlfield about the transaction. The sheriff then got into communication with Mr. Cawlfield who was then at Crane and learned that a warrant had been issued and placed in the hands of his son. The sheriff then called at the Pollock farm about 9 o'clock on the morning of August 27th and asked for Fried Yerdlow, who was not at the house at that time. About an hour after Fried Yerdlow returned to the Pollock home. The sheriff who had gone away when he failed to find defendant returned at 10 o'clock and inquired for defendant under the name of Fried Yerdlow. Thereupon the defendant responded, "That's me,—why?" The sheriff said, "You are under arrest." The defendant said, "What for?" The sheriff said, "For issuing bad checks." Defendant said, "What checks?" The sheriff said, "You ought to know as well as I. The check to Cawlfield." Defendant then asked Goodman if he had a warrant for his arrest, to which Goodman first replied that he had, and upon being asked by the defendant to see the warrant, he informed him that a warrant was issued and that he had been informed by telephone, but that the defendant was under arrest. Whereupon defendant said, "All right, Mr. Sheriff, I will go with you anyway, but let me get my saddle." The sheriff gave his consent to the defendant going to get his saddle, but first searched the defendant and removed from his person a few articles, including a checkbook. The defendant then went over where he had tied his horse, a distance of about 330 feet, near which, on the ground, lay defendant's saddle, having strapped thereto, in scabbards, a six-shooter, a Win-

chester rifle, and a hunting knife, the last being rolled up in a bundle at the rear of the saddle, with other articles. The sheriff followed the defendant slowly, examining the check-book which had been taken from the defendant. When the sheriff got about 110 feet distant from the Pollock house and near a store building, he was heard to say, "Put that gun down! Let that gun alone! Oh, so that's your game, is it? That is a game two can play at." He then turned and went back to his automobile, about 30 or 40 yards distant, took his rifle from the car and started back in the direction where Cody was. About this time the witnesses, Mrs. Pollock and her two sons and George Prince, the last of whom had been traveling with the defendant, found safety in the root cellar and did not hear anything else, not even the shots which were fired. Two shots were fired. One by the defendant and the other by the sheriff. When the said witnesses emerged from the cellar, near the said store, the sheriff had been shot by the defendant in the right thigh and bled to death in a short time. The bullet grazed the left thigh and then entered the right thigh, severing an artery.

The defendant pleaded self-defense. He contends that he did not have his gun in his hands at the time the sheriff commanded him to "put that gun down" and that he did not hear that command; that he intended to go with the sheriff and plead guilty to the crime of obtaining money by false pretenses, and desired to take his saddle and bridle with him to Burns; that he looked up and saw the sheriff with his rifle aimed at him. Thereupon he grabbed his rifle from the scabbard and shot without taking aim, but shot from the hip; that he thereupon dodged under the neck of his horse, threw the saddle on and

without cinching it, jumped on his horse with the aid of his mane and escaped; that he did not know that he hit the sheriff until he learned of it the next day when placed under arrest; that he thought his life was in danger and his motive was to escape being shot.

The state's theory of the case is that Cody had formed in his mind his intention of escaping from the sheriff; that while the sheriff was returning from the car to secure his rifle, defendant lay in wait until the sheriff returned and as the sheriff stepped out past the corner of the building the defendant fired the shot that killed the deceased. That the deceased also fired a shot that missed the defendant. The defendant contends that the sheriff shot first and without provocation. The state contends that the defendant shot first and that the sheriff shot as he fell.

A great many alleged errors are assigned. The other facts necessary to understand the reasons for our decision will be stated in the opinion.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. E. J. Newman.*

For respondent there was a brief and oral arguments by *Mr. E. M. Blodgett,* District Attorney for Malheur County, and *Mr. V. G. Cozad,* District Attorney for Harney County.

COSHOW, J.—The defendant contends, here as he did in the Circuit Court, that the deceased had no authority to arrest the defendant. It will be remembered that the deceased was sheriff of Harney County; that he arrested the defendant in Malheur County. The defendant contends that the crime for which he

was arrested was a misdemeanor and the deceased
not having in his possession the warrant was not
authorized to arrest the defendant. It is conceded
that the warrant was not indorsed by any Justice of
the Peace in Malheur County. The state contends
that the crime charged against the defendant was a
felony; that the deceased was informed of the crime
and had reasonable grounds for believing the defend-
ant had committed the crime and was therefore au-
thorized to arrest defendant, notwithstanding he did
not have the warrant in his immediate possession.
The crime for which the defendant was arrested was
committed in Harney County.

The information against the defendant charged
him with obtaining goods by false pretenses: Sec-
tion 1964, Or. L. The false pretense, as alleged in
the information, was accompanied by a check drawn
on a bank in which the defendant had no funds. The
goods obtained by the use of the check were two
horses. The defendant contends that the information
charged only the crime of giving checks without funds
for payment: Section 1964—1, Or. L. The state
offered for the purpose of establishing its contention
the testimony of Cawlfield, prosecuting witness, the
testimony of Ed Goodman, son of the deceased and
deputy sheriff, and Mr. Sizemore, who was at that
time prosecuting attorney of Harney County. Some
of the conversation testified to was over the phone.
The state did not attempt to prove the conversation
other than to show that the prosecuting witness com-
municated with the prosecuting attorney that the
crime had been committed whereupon the prosecuting
attorney filed the information upon which the warrant
for the arrest of the defendant was issued. The in-

formation itself was introduced as Plaintiff's Exhibit 2 over the objection of the defendant.

1. The objection of the defendant to the admission of the testimony as to the conversations between Cawlfield, Ed Goodman, Sizemore and Austin Goodman, is "most of which are founded on hearsay, were held over the telephone and which were had in the absence of the defendant; that the information sworn to by Sizemore and forming the basis for the issuance of a warrant for the arrest of defendant in connection with the giving of a check to Cawlfield is incompetent, irrelevant and immaterial as to any issue involved in this action, as the only crime charged by such information, if in fact it charges any crime at all, is the crime of giving a check on a bank where the maker had no funds or credit which at most would amount to the charge of the commission of a misdemeanor and would not authorize the arrest of the defendant, except by a proper officer and he would by necessity have to be in possession of a proper warrant authorizing him to make such an arrest. An attempt to make an arrest without being armed by such proper warrant would be unlawful." Inasmuch as the defendant admits that he submitted to an arrest when informed that there was a warrant for him, it is difficult to understand how this evidence could have prejudiced the defendant's case. If the defendant had committed the crime of which he was convicted by resisting arrest, the objections of the defendant would be relevant.

2. The information, by virtue of which the warrant for the arrest of the defendant was issued, charges a felony. The contention of the defendant that because the token used by the defendant to obtain the two horses was a check on the bank and therefore

constituted only a misdemeanor under Section 1964—
1, Or. L., cannot be sustained. A check is one of the
most common used tokens in the commission of a
crime for obtaining goods under false pretenses:
*State* v. *Miller,* 47 Or. 562, 567, 569 (85 Pac. 81, 6
L. R. A. (N. S.) 365); Underhill's Criminal Evidence
(3 ed.), 892, § 650. The gist of the crime in Section
1964 is that of obtaining property of others by false
pretenses. The gist of the crime condemned in Sec-
tion 1964—1 is uttering a check on a bank where the
maker of the check has no funds. While the infor-
mation against the defendant in this case included
the latter crime it also charged the former. The in-
formation itself charges the defendant with having
committed the crime of obtaining money by false pre-
tenses and that the defendant by means of said pre-
tenses obtained from the said Cawlfield two geldings.
The fact that the information includes the lesser crime
does not prevent it from charging the greater also.

3. The difference between the two crimes may be
illustrated thus:

The defendant obtained the two horses by repre-
senting to Cawlfield that he had money in the bank
at Elko, Nevada. The false token used by him to
obtain those horses was the check which was in writ-
ing and drawn on that bank. He thus obtained the
horses by false pretense as defined in Section 1964,
Or. L. If instead of procuring the horses by using
the check he had bought the horses promising to pay
for them thereafter, and at a later date had given the
check as a payment of the indebtedness he would
have been guilty of uttering a check on a bank in
which he had no funds as defined in Section 1964—1,
Or. L. He would not have been guilty of violating
said Section 1964 because he would not have obtained

the horses by the use of a false token. Section 1541, Or. L., provides:

" * * No evidence can be admitted of a false pretense expressed orally and unaccompanied by a false token or writing; but such pretense, or some note or memorandum thereof, must be in writing, and either subscribed by or in the handwriting of the defendant."

This provision does not apply to the crime denounced in said Section 1964—1.

4. Cawlfield was permitted to testify over the objections of the defendant that the defendant represented at the time he gave the check to Cawlfield and obtained the horses that the defendant had money in the bank against which the check was drawn. We cannot see how this evidence could have prejudiced the defendant. The defendant admits having given the check for the two horses, testified that he had no funds in the bank, and his attorney in his exhaustive brief in this court attributes to the defendant the intention to go with the sheriff and plead guilty to the charge. The defendant himself also testified to that effect. We do not think it was error for the court to have permitted the witness Cawlfield to testify as to the representations made by the defendant when he obtained the horses for the check. The crime of which the defendant has been convicted had its origin in the circumstances testified to by the witness Cawlfield. It was the transaction which led up to taking the life of the deceased. It was therefore germane to the issues in this case.

5. The position taken by the defendant in regard to the authority of the deceased to arrest the defendant is not well taken. The defendant was charged with a felony at the time he was arrested.

"A peace officer may, without a warrant, arrest a person,—

"1. For a crime committed or attempted in his presence;

"2. When the person arrested has committed a felony although not in his presence;

"3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it." Section 1763, Or. L.; *State* v. *Laundy,* 103 Or. 443, 495 (204 Pac. 958, 206 Pac. 290).

"A private person may arrest another for the causes specified in section 1763 in like manner and with like effect as a peace officer without a warrant." Section 1768, Or. L.

6. It clearly appears that under the statute since the defendant was charged with having committed a felony, the deceased was informed to that effect and had reason to believe the defendant had committed the crime. He was authorized to arrest the defendant though he had no warrant and was not in the county of which he was sheriff at that time. This conclusion disposes of the alleged errors based upon the degree of the crime for which defendant was arrested by the deceased, not only as to admission of testimony, but also as to certain instructions given, and others requested by the defendant and not given.

The defendant having submitted to the arrest cannot be heard to complain because the deceased had no warrant: Section 1757, Or. L.

7. We deem it unnecessary to treat separately all the assigned errors. The court is not required to give requested instructions in the language asked, although the law is correctly stated therein. The judge should instruct the jury fairly and impartially regarding the theory of both parties when there is

any evidence justifying him so to do.   He may do this in his own language and order: *State* v. *Savage,* 36 Or. 191, 215 (60 Pac. 610); *State* v. *Garrett,* 71 Or. 298, 309 (141 Pac. 1123).

8. The instruction upon the statutory presumption of intent to murder from the deliberate use of a deadly weapon as given by the court is complete and correct: Section 793, subd. 1, Or. L. *State* v. *Bartmess,* 33 Or. 110, 130 (54 Pac. 167), was followed strictly.

9. The defendant alleges error because the court refused to strike out the answer of the witness, Grace D. Pollock, to the following question propounded by his attorney on cross-examination:

"Q. There had been nothing in the attitude of Archie Cody during the time that he was there and prior to your coming out of the cellar that would indicate any malice or any disposition on his part to injure you, had there?

"Mr. Lytle: We object, if the Court please, as calling for conclusion of the witness.

"Mr. Newman: This is cross-examination, and the witness has testified that she was afraid of Archie Cody.

"The Court: You may answer the question.

"(Question read.)

"Q. The question is, to injure you, Mrs. Pollock.

"A. His attitude in going to the horse immediately was an attitude of injury to someone, in my mind.

"Mr. Newman: We move, your Honor, that that answer be stricken out as not responsive.

"Mr. Lytle: Counsel just inquired as to what was in the witness' mind.

"The Court: I won't strike it out.

"Exception allowed."

It was not error for the court to deny the motion. Counsel for defendant invited the answer.   The con-

duct of the witness, Mrs. Pollock, her two sons and
George Prince, in seeking refuge in the root cellar
already testified to as having occurred before the de-
ceased had secured his gun was before the jury. This
witness was under cross-examination regarding that
and other matters to which she had testified. The de-
fense having brought out this testimony was not
entitled to have it stricken out. It was admitted over
the objection of the state.

10. Defendant also complains of the court's instruc-
tions on self-defense. The instructions were complete,
fair and warranted by the testimony. It was the
theory of the state that the defendant formed his in-
tention of escaping after submitting to arrest, and
when he discovered the sheriff was not following
him closely resolved to kill the deceased in order to
make good his escape. The testimony of the wit-
nesses, Mrs. Pollock, her two sons and Prince and
their conduct in seeking a place of safety after hear-
ing the sheriff command the defendant to "put that
gun down" tends to support the theory of the state.
The court instructed the jury also on the theory of
the defendant. A part of his instruction in that
behalf is as follows:

"If you find, however, that the defendant while in
the lawful custody of the deceased asked permission
to take care of his horse and went to the place where
his horse was tied and thereafter the deceased, with-
out warning or without a warning that was heard
by the defendant, fired a shot at him, and that the
defendant had not armed himself for the purpose of
escape and was doing no other overt act in attempting
to escape or to injure the life of the deceased, and
from all of the circumstances appearing to him at
that time it was necessary, and defendant also had
reasonable cause to believe it was necessary to take

the life of the deceased, this would constitute self-defense.''

11. The defendant also assigns error because the court instructed the jury on the defense of insanity. Defendant does not complain that the instruction as given was contrary to law, but contends that it was not applicable to the case. Defendant contends that the defense of insanity was not made or intended to be made. But the defendant did introduce considerable testimony regarding the mental capacity of the defendant. In offering the evidence he stated that such was his purpose. It was proper therefore for the court to give the instruction.

The errors assigned because of the definitions of ''premeditation,'' ''purposely'' and ''malice'' are without merit. In this connection the court gave instructions, heretofore approved by this court, and as defined by standard authorities. We deem it unnecessary to go into detail because taking the instructions as a whole in defining the several degrees of homicide they are explicit, fair and sound.

The defendant also alleges error because of a remark of the court to the attorney for the defendant during the course of the trial. The record does not disclose that any objection was made to the court's remark at the time. While the colloquy between the court and the attorney is followed by the expression ''Exception allowed,'' we believe that referred to the court's ruling upon an objection made by the attorney to a question propounded to the witness. But waiving that, it was not error nor could it have influenced the jury in its deliberation. In our opinion the remark of the attorney, as well as the remark of the court assigned as error, appears to have been the result of a misunderstanding. The entire record dis-

closes that the court was not only fair but even indulgent to the defendant. His rights were protected and he was given every opportunity to adduce evidence to support his plea of self-defense.

12. A great deal of stress is placed upon some circumstances occurring at the time the defendant was arrested by a posse formed after the killing of the deceased. It appears that one member of the posse was unduly rough with the defendant, but it also appears that this conduct was confined to only one member and it could in no way contribute to the evidence of the guilt or innocence of the defendant. The evidence clearly shows that the defendant was treated humanely in all respects after he had been captured and his weapons taken from him. The statements made by the defendant to members of the posse were admissible as evidence against his interest. There was no attempt to prove a confession.

13. Most of the questions discussed by the defendant on this appeal relate to the weight of the testimony. The defendant moved to charge the jury that there was not evidence sufficient to constitute either the crime of murder in the first degree or murder in the second degree. Both motions were properly denied. The evidence was sufficient to warrant the jury to return the verdict of murder in the first degree, if it believed the testimony of the witnesses for the state. The weight of the testimony was a question of fact to be determined by the jury.

14. This court is forbidden by the fundamental law from interfering with the verdict where there is any material evidence to support it. For these reasons the judgment is affirmed.          AFFIRMED.