Argued May 20, 1959, affirmed January 13, 1960

# GUMM *v.* HEIDER

348 P. 2d 455

8

*Norman K. Winslow,* Salem, argued the cause for appellant. With him on the briefs were George Neuner, McMinnville, and W. C. Winslow, Salem.

*Edward L. Clark, Jr.,* Salem, and *Robert G. Ringo,* Corvallis, argued the cause for respondent. With them on the brief were James W. Walton, Corvallis, and Marsh, Marsh & Dashney, McMinnville.

Before LUSK, Presiding Justice, and WARNER, PERRY, SLOAN, O'CONNELL, CRAWFORD and MILLARD, Justices.

LUSK, J.

This is an action for malicious prosecution. The plaintiff had a verdict and judgment for $25,000 general damages and $5,000 punitive damages, and the defendant has appealed.

The following, we believe, is a sufficient statement

of the facts for an understanding of the questions raised by the assignments of error.

On July 15, 1953, the plaintiff was indebted to the defendant in the conceded sum of $630.00, and, as the defendant claims, in an additional sum of at least $170.00. The indebtedness was secured by the certificate of title of a Chevrolet truck which was in the possession of the defendant and made out to him as "legal owner or mortgagee," and by a mortgage on a yarder, or loader, which is referred to in the testimony as a donkey. Prior to July 15, according to the plaintiff, the defendant had told him that he "would just discount it [the indebtedness] down to $630 if we would bring the money down there." On July 15, the plaintiff went to the office of the defendant, in Sheridan, Oregon, for the purpose of paying off the indebtedness. He had previously borrowed $630.00 from one Chet Thayer and he brought with him the latter's check for that amount, payable to the plaintiff. There is a dispute in the evidence as to what occurred in Heider's office on that day. The defendant claims that on receiving Thayer's check endorsed by the plaintiff, he delivered to the latter the certificate of title to the truck, but did not deliver a bill of sale to the donkey because the debt was not paid in full, and that the plaintiff returned a week later, that is, on July 23, and gave him a check for the balance of $170.00, at which time he delivered to the plaintiff a bill of sale of the donkey. The evidence for the plaintiff is that on July 15, after he gave Heider the Thayer check, the latter handed him both the certificate of title to the truck and a bill of sale to the donkey, but that immediately afterward the defendant "reached over the desk and took my contract on the donkey and the truck title back from me and demanded another

$170.00." Eventually on that day, the plaintiff testified, he gave Heider his check for $170.00 and received the papers evidencing title to the truck and the donkey.

The plaintiff claims that, although he did not owe the additional sum, he was in a position where he was forced to pay it, since he needed the bill of sale and the certificate of title to turn over to Thayer to secure the latter's loan to him of $630.00. He testified that it was agreed between him and the defendant that the check would be post-dated ten days, and that he told the defendant that he did not have the money in the bank but "expected to have it in the next week, the money to make it good." We quote from his testimony:

"A Well, I took this check from Chet Thayer's office down to Sheridan, and Otto Heider was out to lunch at the time I got there, so when Mr. Heider come down the street I went into his office alone and I handed him this $630.00 and he handed me the papers on the truck and on the donkey. Then the door opened and Mr. Sasser walked in and he demanded the checks that he had made out to Otto Heider for the purpose of buying my truck— these checks were payable to Mr. Heider, because Mr. Sasser was buying a truck from me, and which Mr. Sasser did, he took the checks made to him for whatever balance there was, and then Mr. Heider demanded—he reached over the desk and took my contract on the donkey and the truck title back from me and demanded another $170.00.

"Q Just describe to the jury how he did it. Tell them what he did when he took those back.

"A He was sitting in his chair and he just reached across and said he should have more money than that out of it because he wasn't really getting the right amount, he wanted more money, and he told me that I had the privilege of paying him the $170.00 or he would give it to anyone that would give him the $170.00, and Mr. Sasser stood there

and he had the opportunity of paying the $170.00 as well as me, so I left, I walked out the door and went back down to the car, and pretty soon Mr. Sasser come down and said, Well, you're going to lose everything if you don't go back and do as he requests, so then I went back with my wife and signed the $170.00 check.

"Q Your wife went back upstairs with you?
"A That's right.

\* \* \* \* \*

"Q I hand you plaintiff's Exhibit 2, a check, and Exhibit 1, a truck title, and Exhibit 12, a Bill of Sale. Now, we will start out with Exhibit 1, a truck title. Would you please tell the jury if that is the same truck title that Otto Heider handed you that day?
"A Yes, it is.

"Q Would you please turn it over? Do you see any names written on the back?
"A Yes.

"Q Were those written in your presence?
"A Yes.

"Q Tell the jury what names are written there?
"A Well, when me and my wife went back up to sign this $170.00 check, he handed me this title, and I told Mr. Heider that I had no way of getting Mr. Sasser's name off this, so he signed Merle Sasser's name in both places, on this down here; in other words, he signed off Merle Sasser's name as owner so that I could sign it back into my name.

"Q And he signed Mr. Sasser's name in your presence?
"A That's right.

"Q Was Mr. Sasser standing there?
"A No.

"Q Now Mr. Gumm, take the check, the $170.00 check. Is that the check which you and your wife signed?
"A Yes.

"Q Who typed it up?

"A Otto Heider.

"Q Just tell the jury how it happened,—what took place?

"A Well, I started to write out the check myself for $170.00 and previous, why, we had agreed on an additional 10 days before it would come through, and he started to reach over and take my checkbook, so I did have a balance in the bank of my own account, so I tore out the check and handed him the check, and while he was typing up this check I wrote in my checkbook what the amount was for and the date and made an entry in my checkbook while he was typing this.

"Q And Otto Heider typed up that check himself?

"A Yes; and then me and my wife signed it."

The plaintiff also testified that the check was good at the time he gave it, but he intended at the time that he gave it to stop payment of it, because he had paid his indebtedness to Heider in full. The ledger sheet of the bank account of the plaintiff corroborates his testimony that the check was good on the day it was delivered, whether that date was July 15 or July 23.

The defendant was asked the following question about the giving of the check for $170.00: "What was said about the check, Plaintiff's Exhibit 2 dated July 25th when, as you testified to, it was delivered to you on July 23rd?" He answered: "Mr. Gumm asked me when the check would be presented to his bank for payment; I told him it would take about two days in transit from Sheridan branch to Corvallis branch, and at his suggestion it was dated the 25th. I told him it would be there on the 25th for payment, and it was there on the 25th, and there was no question about being money there in the bank to cover it. That's

why it was dated two days after it was delivered to me on the 23rd." The defendant denied that the plaintiff explained why it made any difference to him whether the check was dated the 25th instead of the 23rd of July, and said that the plaintiff "asked for the 25th, and I put it on there, because our dealings were friendly and cordial, to help him out." He testified on cross-examination:

"Q Then your testimony is that after you told him that no matter what date was on the check it would not be presented until the 25th, that he insisted the check be dated the 25th instead of the 23rd when it was handed to you? * * *
"A Yes; he asked it be dated the 25th. He asked that."

The check, which is in evidence, is dated July 25, 1953, drawn on the Corvallis Branch of The United States National Bank of Portland, Oregon, payable to the order of Otto W. Heider, in the amount of $170.00, signed Robert Gumm and endorsed on the back Della Gumm. The defendant deposited the check in the Sheridan Branch of The United States National Bank of Portland on July 23, 1953. It was presented for payment to the Corvallis bank on July 25, and payment was refused because of insufficient funds in the plaintiff's account. The defendant again presented it on August 1, and payment was again refused for insufficient funds. On August 14, the plaintiff put a stop order on the check. The defendant has never received payment of the amount for which it was drawn.

On April 19, 1954, the defendant swore to a criminal information before the District Judge for Yamhill County, Oregon, charging the plaintiff with issuing the check with intent to defraud. A warrant for the

arrest of the plaintiff was issued, and he was arrested in Chitwood, in Lincoln County, where he was engaged in logging, and confined in the county jail at Newport on Friday afternoon, April 30, and until the afternoon of the following Monday, when he was released on bail. On May 4, 1954, the plaintiff waived preliminary examination, and was held to answer. On May 20, 1955, the court, on motion of the attorney for the accused, ordered the prosecution to be dismissed on the ground that the accused had not been indicted within the time required by ORS 134.110, to-wit: "at the next term of the court at which he is held to answer * * * *."

This action was commenced May 25, 1955.

■ The first assignment of error challenges the court's action in overruling defendant's demurrer to the amended complaint, based on the ground that the pleading failed to state facts sufficient to constitute a cause of action. Two propositions are urged, first, that the amended complaint fails to allege a want of probable cause for instituting the criminal action against the plaintiff, and, second, that it fails to allege a favorable termination of the criminal proceedings.

The amended complaint included the following allegation: "* * * on May 4, 1954 he [the plaintiff] appeared before the aforementioned District Court and there waived preliminary hearing on advice of counsel and was held to answer for said alleged crime." The defendant argues that although the complaint alleges that the prosecution was instituted without probable cause, the effect of this allegation is overcome by the one quoted, since a binding over by the magistrate is *prima facie* evidence of probable cause and will preclude recovery in an action for malicious prosecution

unless it is alleged and proved that the action of the magistrate was induced by false testimony or other improper means.

In *Hryciuk v. Robinson,* 213 Or 542, 326 P2d 424, we considered a similar question and held that if the defendant in an action for malicious prosecution caused a criminal prosecution to be instituted against the plaintiff, knowing that the latter was innocent of the charge, the effect of a binding-over order on the question of probable cause was overcome. The rule established by that decision was followed in *Drake v. Anderson,* 215 Or 291, 334 P2d 477. Further support for it is found in *Schoonover v. Myers,* 28 Ill 308, 312 (1862), a case not previously cited by us, where the court said:

"The first question of law which is presented, arises upon the fact, that when the plaintiff was brought before the magistrate upon the prosecution, for the institution of which this action is brought, he waived an examination and voluntarily gave bail for his appearance at the Circuit Court. This, it is insisted, was an admission at least of such a probability of guilt as to preclude him from ever after saying, that the prosecution was maliciously instituted. We do not think so. Such a course may often be judiciously advised, when the party is not only innocent in fact, but known to be so by the prosecutor."

We are of the opinion that the rule announced in the *Hryciuk case* is sound and should not be disturbed. Here, the amended complaint alleges that "* * * the check referred to by the defendant in said complaint was given without consideration and was a postdated check; that these facts were known to the defendant at the time he swore the complaint," and, further, that "the defendant well knew that the plaintiff was

not guilty of the crime as charged or of any other crime * * *." As will appear in the discussion of another assignment of error, the giving of a check without any consideration for it would not constitute a crime. If the defendant knew that there was no consideration, then he knew that the plaintiff was innocent of the crime charged and did not have probable cause for institution of the prosecution. The first ground of the demurrer is, therefore, without merit.

██ The defendant moved for a directed verdict on the ground, among others, that the plaintiff's evidence was insufficient to overcome the *prima facie* case of probable cause resulting from the waiver of preliminary examination and the consequent order of the magistrate binding over the plaintiff to the grand jury. The court's denial of the motion is assigned as error.

> "A defendant in an action for malicious prosecution can not make out a case of probable cause, however suspicious the circumstances of the plaintiff's guilt, if he knew or believed that the plaintiff was not guilty." 1 Harper and James, The Law of Torts, p 312.

See, also, 3 Restatement of Torts, § 662, Comment c, p 404. Here, the jury could have found from the evidence that the plaintiff's debt to the defendant was fully paid with the Thayer check for $630.00. If the plaintiff owed nothing beyond that sum, he did not violate the Worthless Check Statute. ORS 165.225. "A false representation, by which a man may be cheated into duty, is not within the statute." *The People v. Thomas,* 3 Hill (NY) 169. See, also, *In re Cameron,* 44 Kans 64, 24 P 90, 21 Am St Rep 262; *Rex v. Williams,* 7 Car & P 354; *Commonwealth v. McDuffy,* 126 Mass 467; Annotation, 20 ALR2d 1266; Perkins on Criminal Law, p 264. These authorities all deal with the crime of

obtaining money or property by false pretenses, but they are applicable here because the element of intent to defraud is common to both offenses. That element is lacking where a check is given as in payment of a non-existent debt. If the defendant knew there was no debt, he knew that there was no fraud, and therefore no probable cause.

Moreover, even under the theory that the plaintiff must show that the inference of probable cause arising from the binding-over order can only be overcome by evidence of false testimony or other improper means employed by the defendant to induce the making of the order, the assignment of error cannot be sustained.

■ As will hereafter be shown, the giving and accepting of a postdated check in the circumstances of this case did not constitute a crime.

The record discloses the following:

The defendant plead in his answer that before signing the criminal information he made a full and fair statement of all the facts to the district attorney of Yamhill County, who thereupon prepared the information. He testified to that effect, and more particularly that he had told the district attorney that the check was accepted by him on July 23 rather than July 25, the date it bore. The district attorney, who was called as a witness by the plaintiff, denied this portion of the defendant's testimony and swore that if he had been so informed he would not have issued the complaint. The information alleged that "on the 25 day of July, 1953" Robert Gumm did "make, draw, utter and deliver to Otto W. Heider" the check in question. The defendant swore to the information before Rollin B. Wood, District Judge for Yamhill County. Judge Wood testified that he was not informed by the de-

fendant that the true date of the acceptance of the check by him was July 23 instead of July 25, and that if he had been advised of that fact he would not have issued a warrant based on the information without first consulting with the district attorney.

In this state of the evidence, the jury were authorized to find that the defendant, who was a member of the Oregon State Bar, conscious of the materiality of the fact that the check was postdated, had deliberately misrepresented the fact in that regard both in his statement to the district attorney and in the criminal information to which he swore before the district judge in order to secure the sanction of those officers to initiation of the prosecution.

█ It would have been error for the court to have determined as a matter of law that there was probable cause for the prosecution. It was the court's duty to instruct the jury to find the facts bearing upon that question and to explain to them what facts would or would not constitute proof of probable cause. *Kuhnhausen v. Stadelman,* 174 Or 290, 310-312, 148 P2d 239, 149 P2d 168. This the court did in the charge, to which the only exceptions taken by the defendant were as follows:

> "MR. NEUNER: The only exception I have, Your Honor, is to the effect that the jury, if they reach the punitive damages, may consider or should consider the defendant's financial ability; or a failure to give defendant's requested instructions."

Counsel for the defendant then made the following statement:

> "MR. NEUNER: I want to say this, since it is over with—I believe the instructions were very full and carefully stated the law in the case; win or

lose, I think the Court did a wonderful job of instructing the jury."

■ In support of the demurrer, the defendant contends that there is no sufficient pleading of a termination of the criminal prosecution favorable to the plaintiff, and a similar contention with respect to the sufficiency of the proof is urged in support of the motion for a directed verdict. These questions were properly raised by the demurrer and the motion.

The amended complaint, after setting forth the facts concerning the institution of the criminal proceeding by the defendant, the arrest of plaintiff and his waiver of preliminary examination, alleged:

"That thereafter said defendant did not further press said charges which he had instituted against the plaintiff and said defendant did not appear before the Grand Jury in Yamhill County nor did he request permission to so appear before the Grand Jury, and the defendant abandoned all further prosecution against the plaintiff on said charge; that no indictment was ever found against the plaintiff and on the 20th day of May, 1955, the prosecution against said plaintiff was dismissed by the order of the Judge of the Circuit Court of the State of Oregon for the County of Yamhill."

The order of dismissal was made on motion of the defendant in the criminal case, the plaintiff here. It recites as the ground therefor "that the defendant has not been indicted within the time required under the Oregon Statutes, pursuant to Section 134.110 O.R.S."

The district attorney, Elliott B. Cummins, testified that he was present in court when the order was made; that, in August of 1954, information had come to him that sufficient funds were on deposit to the credit of the plaintiff in the bank on July 25, 1953 to pay

the check, and for that reason that he had decided about that time, i.e., August, 1954, to abandon the prosecution. He was also influenced by the fact that a stop-payment order had been put on the check, because that indicated to him there was "an argument between them as to who owed who for what." He testified that later on he learned about "the contentions regarding the date of the check and the date of the delivery," and that if he had known in August 1954 that the check was given two days prior to its date his action would have been the same. He testified:

"Q At any time during that two year period after the alleged offense was committed, has Otto Heider ever asked you to present this matter to the grand jury?

"A Well, Mr. Heider was—I don't know whether he asked me that specifically or not—he was pressing for prosecution.

"Q But you refused, or at least you did not do it?

"A At least I did not do it."

◼ A termination of the prosecution favorable to the accused is essential to recovery by the plaintiff in an action for malicious prosecution. *Forster v. Orr,* 17 Or 447, 450, 21 P 440. If such termination is indicative of the innocence of the defendant, it is immaterial that a new prosecution might have been commenced provided it was not in fact commenced before the trial of the civil action. *See v. Gosselin,* 133 Conn 158, 160, 48 A2d 560; *Graves v. Scott,* 104 Va 372, 51 SE 821, 113 AmStRep 1043, 2 LRA (NS) 927, 7 Ann Cas 480; *Jaffe v. Stone,* 18 Cal2d 146, 114 P2d 335, 135 ALR 775; 3 Restatement of Torts, § 659.

◼ A statute of this state makes it the duty of the district attorney to submit an indictment to the grand

jury and cause the evidence in support thereof to be brought before it in the case of every person held to answer to a criminal charge in the court wherein such jury is formed. ORS 132.330. It is provided by ORS 134.110, pursuant to which the prosecution was dismissed:

"When a person has been held to answer for a crime, if an indictment is not found against him at the next term of the court at which he is held to answer, the court shall order the prosecution to be dismissed, unless good cause to the contrary is shown."

No indictment was found against the plaintiff at the next term of the court at which he was held to answer, and he was therefore entitled to have the prosecution dismissed, in the absence of a showing of good cause to the contrary. Since the court made the order of dismissal, it must be presumed that there was no such showing.

Such an order is a bar to another prosecution for the same crime if the crime charged is a misdemeanor, but not if it is a felony. ORS 134.140 (2). The statute under which the prosecution was initiated was held unconstitutional in *State v. Pirkey,* 203 Or 697, 281 P2d 698. The reason for this decision was that the statute, Laws 1949, ch 129, § 1, as it then read provided that a person violating it "may be proceeded against either as for a misdemeanor or as for a felony, in the discretion of the grand jury or the magistrate to whom complaint is made." The provision was held to violate the equal protection clause of the Fourteenth Amendment of the United States Constitution. See 203 Or 708. The Pirkey case arose out of an indictment by the grand jury, and we held that in view of the use of the word "feloniously" in the indictment the accused was

charged with the commission of a felony. The word "feloniously" is likewise employed in the criminal information on the basis of which the district judge issued a warrant for the arrest of the plaintiff. The decision in the Pirkey case was rendered March 2, 1955, prior to the order of dismissal. Putting to one side any difficulties that might suggest themselves because of that fact, we will treat the question now before us as though there had been no constitutional defect in the statute, and shall assume that a new prosecution could have been commenced within the period of the statute of limitations, which is three years after the commission of the felony. ORS 131.110. In fact, no such prosecution had been instituted before the trial of this case commenced on February 14, 1956.

■ It is sometimes broadly stated that if the original proceedings were terminated or abandoned at the request or procurement of the plaintiff they are not terminated in his favor in such a way as to satisfy the rule. Harper and James, The Law of Torts, p 309. We think, however, that a more accurate statement of the law was made by Judge Hiscock, writing the opinion for the court in *Halberstadt v. New York Life Ins. Co.*, 194 NY 1, 86 NE 801, 21 LRA (NS) 293. He said:

"From all of these authorities added to others which are more familiar I think two rules fairly may be deduced. The first one is that where a criminal proceeding has been terminated in favor of the accused by judicial action of the proper court or official in any way involving the merits or propriety of the proceeding or by a dismissal or discontinuance based on some act chargeable to the complainant as his consent or his withdrawal or abandonment of his prosecution, a foundation in this respect has been laid for an action of malicious prosecution. The other and reverse rule is that

where the proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties or solely by the procurement of the accused as a matter of favor or as the result of some act, trick, or device preventing action and consideration by the court, there is no such termination as may be availed of for the purpose of such an action. The underlying distinction which leads to these different rules is apparent. In one case the termination of the proceeding is of such a character as establishes or fairly implies lack of a reasonable ground for his prosecution. In the other case no such implication reasonably follows. * * *" 194 NY at 10.

See, also, *Jaffe v. Stone,* supra.

We do not have here a case of dismissal procured by the accused as a favor or by way of compromise, or through trick or device, but dismissal sought and granted as a matter of right. The district attorney was present in court at the time, and presumably made no objection. In fact, his testimony indicated clearly that he approved the order of dismissal. Thirteen months had passed since the order of the magistrate holding the plaintiff to answer, and no further action had been taken on the part of the prosecution. The case had been permitted to lie dormant. The district attorney obviously was of the opinion that the facts did not justify an indictment.

If the accused was ever to be in a position to maintain an action for malicious prosecution, the pending criminal proceedings against him must somehow be terminated. This could have been accomplished on motion of the district attorney, or, probably, by the court *sua sponte.* Neither, however, acted, and we are of the opinion that the plaintiff was not required to

refrain forever from seeking dismissal himself, pursuant to the statute, lest he thereby lose his right to recover for a wrong done him on the theory that he had "procured" termination of the prosecution.

No case has been cited, and we have found none, involving dismissal on motion of the accused for failure to indict within the statutory time. That such a dismissal was a termination of the prosecution we think is not open to question. Counsel for defendant assert in their brief that after the accused in a criminal proceeding has been bound over to the grand jury "the only termination which thereafter can have legal effect upon such criminal proceedings is the return by the grand jury of a 'true' or 'not true' bill. Any such other termination is in clear violation of the statute * * *." The conclusive answer to this contention is to be found in the terms of ORS 134.110, above quoted, which imposes a mandatory duty on the court to dismiss the prosecution if an indictment is not found against the accused at the next term of the court at which he is held to answer unless good cause to the contrary is shown. We need not inquire whether such a termination at the instance of the accused would, without more and regardless of the circumstances, be deemed favorable to the accused, for here it is undisputed that the district attorney had abandoned the prosecution.

■ We understand it to be the law that the rule as to favorable termination is satisfied when the prosecution is abandoned, either by the prosecuting attorney or the complaining witness. 34 Am Jur 723, Malicious Prosecution § 34; 54 CJS 1023, Malicious Prosecution § 55; *Lehmer v. Smith,* 220 Mo App 251, 258, 284 SW 167; *See v. Gosselin,* supra, 133 Conn at 160. Abandonment has been found even where no order of dismissal

by the court had been made. *Winkler v. Blowing Rock Lines,* 195 NCar 673, 143 SE 213; *Longworth v. Schob,* 106 Ohio App 476, 151 NE2d 767; and see *Shaw v. Moon,* 117 Or 558, 565, 245 P 318, 45 ALR 600.

 In our opinion, the amended complaint is not demurrable for failure to allege termination of the prosecution favorable to the accused, and the evidence of such termination is sufficient.

 Defendant assigns as error the court's refusal to give the following requested instruction:

> "The jury are further instructed if you find from a preponderance of the evidence that the plaintiff was indebted to the defendant Heider in the sum of $170.00 on the 23rd day of July, 1953 and gave the defendant a check for that amount dated July 25, 1953, the plaintiff was under the law required to have sufficient funds in the Corvallis Branch of the United States National Bank of Portland at Corvallis, upon which the check was drawn, for the payment thereof when presented, and if you further find that the check was not paid upon presentation thereof for insufficient funds, probable cause for the criminal action would be established and the verdict must be for the defendant."

The statute which the criminal information charged the plaintiff with violating was Oregon Laws 1949, ch 129, which read:

> "*Section 1.* 1. Any person who * * * shall wilfully, with intent to defraud, make or draw, or utter or deliver any check, draft or order upon any bank * * *, for the payment of money, knowing at the time of such making, drawing, uttering or delivering that the maker or drawer * * * has not sufficient funds in, or credit with said bank * * * for the payment of such check, draft or order, in full upon its presentation, although no

express representation is made that there are sufficient funds in or credit with such bank &ast; &ast; &ast; for its payment in full upon presentation, shall be guilty of a crime &ast; &ast; &ast;.

"2. As against the person making, drawing, uttering or delivering a check, draft or order, payment of which is refused by the drawee because of the insufficiency of funds of the maker or drawer &ast; &ast; &ast; in or credit with such drawee, such refusal by the drawee shall be prima facie evidence of intent of such person making, drawing, uttering or delivering such check, draft or order, to defraud and of his knowledge of the insufficiency of funds in, or credit with, such bank &ast; &ast; &ast;."

Instead of giving the foregoing instruction, the court charged the jury in substance that no crime as alleged in the criminal information was committed by the plaintiff, and that the defendant did not have probable cause for initiating criminal proceedings against the plaintiff unless he had made a full and fair statement of all the facts relative to the alleged crime truthfully and without malice to the district attorney of Yamhill County and acted upon his advice in instituting the criminal proceedings.

No exception was taken by the defendant to any of these instructions. We shall assume, though we do not decide, that, notwithstanding this omission, we are authorized to determine the question raised by the assignment of error. If it be true that the plaintiff was not guilty of the crime charged, the defendant did not have probable cause for initiating the criminal prosecution unless he acted in good faith upon the advice of the district attorney after a full disclosure of the facts to that official. 3 Restatement of Torts, § 662 (b) (ii), Comment j, p 409; 65 ALR 243. See *Kuhnhausen v. Stadelman,* supra, 174 Or at 315. This

would be so, notwithstanding the defendant was at that time a member of the Oregon Bar. Restatement, ibid, Comment k, p 410; Prosser on Torts, p 656. It should be observed that, although the statute was unconstitutional, it had not been so determined by this court in *State v. Pirkey,* supra, until after the institution of the criminal proceedings by the defendant. In these circumstances the unconstitutionality of the statute would not affect the question of probable cause. Restatement, ibid, Comment 1, p 411; Harper and James, The Law of Torts, p 313.

■ The plaintiff contends that he did not commit a crime because the statute does not apply to postdated checks. Some courts have so held for the stated reason that a postdated check does not conform to the definition of a check in the Negotiable Instruments Law, to-wit: "a bill of exchange drawn on a bank payable on demand." ORS 71.185. *People v. Mazeloff,* 229 App Div 451, 242 NYS 623; *State v. Crawford,* 198 NCar 522, 152 SE 504. The question is *res integra* in Oregon. We agree with those courts which hold that the giving of a postdated check may be a crime, both because there is no language in the statute which excludes postdated checks and because such an instrument, even though not a check, is a draft and drafts are covered by the statute. *People v. Bercovitz,* 163 Cal 636, 126 P 479, 43 LRA(NS) 667; *State v. Taylor,* 335 Mo 460, 73 SW2d 378, 95 ALR 476 (1934).

But we do not believe that the facts of this case disclose a violation of the statute by the plaintiff.

Upon this subject, the court said in *Clarke National Bank v. Bank of Albion,* 52 Barb(NY) 592, 600:

"Post-dated checks are instruments often used, and their nature and character are well understood by bankers and the trading community. By all such

persons it is regarded that the drawer is not in funds at the bank on which he draws his check, when he makes and delivers the same, and does not expect to be, until the arrival of the date inserted in the check."

Since this is the nature of a postdated check, the courts hold, with few exceptions, that unless the payee is not informed or does not know at the time that he accepts the check that it is postdated no crime is committed even if payment is refused for want of sufficient funds when the check is presented. *People v. Burnett,* 39 Cal2d 556, 247 P2d 828; *State v. Eikelberger,* 72 Ida 245, 239 P2d 1069, 29 ALR2d 1176; *State v. Barone,* 98 NJL 9, 118 A 779; *State v. Crawford,* supra; *Com. v. Massaro,* 97 PaSuper 149; *State v. Bruce,* 1 Utah2d 136, 262 P2d 960. For other cases, see 29 ALR2d 1181. See, also, 22 Am Jur 480, False Pretenses § 70; 35 CJS 662, False Pretenses § 21; Perkins on Criminal Law, p 271. A concise statement of the reason for these holdings is that of the New York court in *People v. Mazeloff,* supra: "Fraud can not be predicated upon nonperformance of a future promise, and a postdated check is a mere promise to discharge a present obligation at a future time." As above indicated, some courts have made an exception to the general rule where the payee of the check did not know that it was postdated. But we are aware of only two cases in which it has been squarely held that the giving of a postdated check to a payee who knows that it is postdated at the time that he accepts it falls within the purview of a worthless check statute such as ours. These are *State v. Taylor,* supra, and *State v. DeNicola,* 163 OhioSt 140, 126 NE2d 62 (1955). The opinion in the Ohio case is in large part a replica of that of the Missouri court in the Taylor

case, though the latter case was not cited by the Ohio court. The Missouri statute contains a proviso making the *prima facie* effect of refusal of payment of a check subject to the condition that it is not paid by the drawer within five days after receiving notice that the check has not been paid by the drawee. For that and other reasons, the Missouri court construed its statute as having "an element of futurity in it", and applied the rule generally accepted in civil cases that fraud may be predicated upon a promise to do something in the future.

We have no such proviso in our statute, though there was a similar proviso in the statute as originally enacted. See Oregon Laws 1920, §§ 1964-1, 1964-2. The gist of the offense is the fraudulent drawing of a check by one knowing *at the time it is drawn* that he does not *then* have sufficient funds in or credit with the bank on which it is drawn. The provision that refusal of payment of the check is *prima facie* evidence of a fraudulent intent is a rule of evidence which does not alter the meaning otherwise plainly expressed.

Counsel for defendant have cited, in addition to *State v. Taylor* and *State v. DeNicola,* the cases of *People v. Bercovitz, State v. Eikelberger,* and *State v. Bruce,* all supra. In *People v. Bercovitz* the payee of the check did not know that it was postdated, and the court was at pains to point out. that "We are not here concerned with a case where the fact of want of sufficient funds and credit is made known by the drawer to the person to whom he delivers the check or draft at the time of the delivery, and the payee chooses, with such knowledge, to rely on a promise or representation of the drawer that he will make such provision that the amount thereof will be paid

on presentation. It may be that as to such a case, a conviction could not properly be had under the section in question." 163 Cal at 638. In *State v. Eikelberger,* there was conflict in the evidence as to whether the check was postdated and the payee received it as such and as to whether the payee agreed to hold the check for a few days. That question was submitted to the jury, and a judgment of conviction affirmed. The court said:

> "A vast majority, if not all of the courts, are in accord that under a statute such as we now have under consideration a disclosure by the drawer to the payee at the time of issuance of the check that he does not have sufficient funds in or credit with the bank to meet the check, purges the transaction of its criminal character, for the reason that fraudulent intent, an essential ingredient of the crime, is absent and the transaction is essentially one of extending credit to the drawer." 72 Idaho at 249.

In *State v. Bruce* the court said: "We conclude that in spite of the difficulty in proving a present existing intent to defraud where the check is postdated, if the payee acting reasonably accepts the check as one of current date, and the facts would support a finding beyond a reasonable doubt that the defendant '* * [sic] wilfully, with intent to defraud * * *' passes a worthless check, the question of his guilt of the crime should be submitted to a jury." 1 Utah2d at 140.

*State v. Johnson,* 116 Kans 390, 226 P 758, and *State v. Avery,* 111 Kansas 588, 207 P 838, 23 ALR 453, also cited by the defendant, are not in point because the Kansas court holds that the worthless check statute of that state does not include the element of intent to defraud.

■ Although this court has in civil cases held that a promise to another to do something in the future made with the present intention not to perform it and for the purpose of inducing the other to part with his money or property may be actionable (*Hansen v. Holmberg,* 176 Or 173, 182, 156 P2d 571, and cases there cited), we have never applied that doctrine to prosecutions for violating the statute which makes it a crime to obtain the money or property of another by false pretenses, but have held in common with most of the other courts of this country and England (See 22 Am Jur 452, False Pretenses § 14; Annotation, 168 ALR 835) that a misrepresentation of a past or existing fact is an essential element of that crime. *State v. Leonard,* 73 Or 451, 472, 144 P 113, 144 P 681; *State v. Hammelsy,* 52 Or 156, 157, 96 P 865, 132 AmStRep 686, 17 LRA(NS) 244; *State v. Miller,* 47 Or 562, 568, 85 P 81, 6 LRA (NS) 365. In *State v. Miller,* which was decided in 1906 before enactment of the Worthless Check Statute, we held that the defendant, who gave the prosecutor a check for $15,000 in payment of the transfer of certain property, and told him at the time that there was no money in the bank on which the check was drawn to meet it, was not guilty of a crime. The basis of the decision was that reliance upon the false pretense by the person parting with his money or property was an essential ingredient of the offense, and proof of such reliance was lacking where it was conceded that he knew the check was not good. In *State v. Cody,* 116 Or 509, 241 P 983 (1925), a prosecution for violation of the False Pretenses Statute, the defendant contended that the only crime shown by the evidence was a violation of the Worthless Check Statute, which was originally enacted in 1917. The defendant had obtained two horses by giving a bad check in pay-

ment for them. The court, in rejecting the defendant's contention, said:

"The gist of the crime in Section 1964 is that of obtaining property of others by false pretenses. The gist of the crime condemned in Section 1964-1 is uttering a check on a bank where the maker of the check has no funds. While the information against the defendant in this case included the latter crime it also charged the former. The information itself charges the defendant with having committed the crime of obtaining money by false pretenses and that the defendant by means of said pretenses obtained from the said Cawlfield two geldings. The fact that the information includes the lesser crime does not prevent it from charging the greater also." 116 Or at 518.

██ ██ Under the clear weight of authority elsewhere and the decisions of this court in analogous cases, we hold that our Worthless Check Statute is not violated by the making or delivering of a postdated check if the payee accepts it knowing that it was postdated and there is no other representation that the check is good or the maker has sufficient money in his account at the bank or credit with the bank to pay it. The proof here shows without dispute that the defendant himself postdated the check in question at the request of the plaintiff, and agreed as an accommodation to him that the check would not be presented at the bank on which it was drawn until two days later. Here was an obvious extension of credit to the plaintiff. The facts do not show the commission of a crime by the plaintiff. The court correctly instructed the jury upon this phase of the case and did not err in refusing to give the requested instruction.

██ Assignment of Error No. 5 reads as follows: "The court erred in receiving in evidence the photo-

graphs which are plaintiff's exhibits 24-31 inclusive." The assignment does not set forth the objection made to the admission in evidence of the photographs, nor does it refer to the page or pages of the transcript where the objection and the ruling thereon may be found. The objection, however, is quoted in the plaintiff's answering brief, and it discloses that the argument in the defendant's brief in support of the assignment is on a proposition not included in the objection or called to the attention of the trial court. Under these circumstances, we decline to consider this assignment of error.

■■ Finally, the defendant contends that the circuit court erred in denying his motion for a new trial based on the ground of excessive damages appearing to have been given under the influence of prejudice and passion. We find nothing in the record to indicate that the jury were influenced by prejudice or passion, and we are precluded from examining the question of alleged excessiveness of the damages allowed by Article VII, Section 3, Oregon Constitution. See *Van Lom v. Schneiderman,* 187 Or 89, 210 P2d 461, 11 ALR2d 1195, and cases there reviewed.

We find no error in the record. The judgment is affirmed.

PERRY, J., specially concurring.

With the exception of the statement that this court is "precluded from examining the question of the excessiveness of the damages allowed by Article VII, Section 3, Oregon Constitution," I concur fully in the opinion of the court.