Argued June 3; reversed and remanded July 1, 1947

# ENGELGAU *v.* WALTER
(182 P. (2d) 987)

482

*Wendell Wyatt,* of Astoria, (Norblad & Norblad and Wendell Wyatt on brief) for appellant.

*William B. Murray,* of Portland, and *Jay H. Stockman,* of Astoria, for respondent.

Before Rossman, Chief Justice, and Lusk, Belt, Bailey, Hay and Winslow, Justices.

WINSLOW, J. (Pro Tempore)

This is an action to recover damages for malicious prosecution. The complaint is in the usual form. The answer, after admitting that the criminal prosecution had terminated favorably to the respondent, denies the charging part of the complaint. A jury trial resulted in a verdict for respondent against appellant in the sum of $3150. Judgment was entered upon this verdict, from which judgment this appeal is prosecuted.

Appellant sets forth three assignments of error. The first is based upon the ruling of the court denying appellant's motion for directed verdict. The second assignment was expressly abandoned at the time of

oral argument. The third challenges the correctness of an instruction given by the court. We shall, therefore, give our consideration to the two remaining assignments.

At the conclusion of the evidence the following proceedings were had:

"MR. NORBLAD: Now, Your Honor, both sides having rested and there being no further testimony, we do at this time move the court to direct the jury to find a verdict for the defendant upon the ground and for the reasons—now you go ahead.

"MR. WYATT: For the reasons that the plaintiff in this case has the definite burden of proving that there is a want of probable cause and on the grounds that the plaintiff has not carried this burden; we have numerous authorities to the effect that the question of probable cause is a mixed question of law and fact; that the facts are to be determined by the jury of course and then based upon a given set of facts, the court is to determine whether or not those facts constitute probable cause, where the facts in dispute in the entire matter should be rightfully submitted to the jury. However, in this case we have facts which we believe are not in controversy and which were produced by the plaintiff's own witnesses; Officer Smith has testified that the wood was identical wood to the wood that the defendant had in his wood shed, and on that reason alone, regardless of the identity of the parties, we feel that that fact would justify the court in finding a want of probable cause; that is the basis of our motion.

"COURT: No; I will have to deny the motion; the acquittal in the police court is prima facie evidence of probable cause and that alone would be enough to carry the case to the jury.

"MR. NORBLAD: Note an exception. Your Honor, the motion that the verdict be directed for defendant in this case is also based upon the fact,

that upon our contention that plaintiff had not affirmatively carried his burden of proof as to malice in the case; we do not believe they have proven malice.

"COURT: I must also deny that because malice may be presumed by the jury from a want of probable cause.

"MR. NORBLAD: Exception."

■ In passing upon the question presented by this motion, we are required to consider this record in the light most favorable to respondent. *Bratt v. Smith et al.,* — Or. —, 175 P. (2d) 444.

At the time of the commencement of this action, respondent was a minor but arrived at the age of majority before the trial. He was a returned veteran from the European theater of war where he had been severely wounded. At the time involved, Labor Day evening 1945, he was just out of the hospital and was in a very weak condition. He, accompanied by his cousin, had gone to Seaside to recuperate. On the evening in question, the two of them were on the beach strolling from one beach fire to another. Just prior to the time of the difficulty involved herein, he and his cousin arrived at a beach fire at which a sailor by the name of Robert Nixon, his sister and his "girl friend" were toasting marshmallows. After exchanging greetings, they sat down, and respondent and the sailor visited about the war, staying about twenty or thirty minutes.

On leaving this fire, they travelled a short distance and came to another fire where two boys were seated. At this fire they were burning slab wood. Shortly after they arrived, the appellant came to the fire and, according to respondent's version, said nothing. According to appellant's version, he accused the boys of stealing

his wood, and they asserted in a very loud manner that he couldn't prove that they took his wood. It is admitted appellant left the fire and went back on the "prom," a distance of some thirty or forty feet from the fire. Immediately thereafter the other two boys at the fire left.

Almost immediately thereafter Officer Smith arrived and took the respondent and his cousin from the fire to the "prom." At this place something of a scene took place, at which appellant demanded that the boys be arrested. He became excited and threatened that if the officer did not arrest the boys he would get a gun and fill them full of buckshot. At that time the boys explained to the officers—there were two of them present on the "prom"—and to the appellant that they had just arrived at the fire, that they had nothing to do with taking his wood, and that they had been at the other fire a short distance therefrom for some time prior thereto.

In addition to this, while the argument was on, Nixon arrived at the scene and verified the statement which the boys had made regarding being at his fire. Nixon testified that about five minutes after the boys left his fire, he arrived on the "prom" where the scene was then being enacted. Still appellant insisted upon the officers making an arrest. During the course of the controversy, some woman made the statement (it was probably appellant's wife) "saying that someone who they thought stole the wood was heading down the prom."

With reference to the matter, Officer Smith testified:

"Well, he wanted to know if we weren't going to arrest them; then I said, well we didn't see them

steal the wood. We don't know whether they stole it or not; the description of the wood was just the same as Mr. Walter's wood; it was slab wood but down a block from Mr. Walter at Montague's there was wood exactly the same and they had been stealing wood there too; I told Mr. Walter we didn't think we had a right to make an arrest without a complaint."

About this time the municipal judge, Mr. Patton, arrived upon the scene and had a conversation with appellant, Officer Smith's version thereof being as follows:

"A. * * * I did, I did hear Mr. Patton tell him though that he wanted to be sure, be sure of himself.

"Q. For what reason?

"A. And be sure that the boys actually took the wood and the wood was his.

"Q. Did he explain any reason why he should be sure about it?

"A. Yes, there were a good many fires on the beach that night; we had calls before this one, several calls on wood which I imagine, venture to say there was a good one hundred fires on the beach that night; I had been among those fires, a lot of them made with drift wood and a lot of them with a big chunk of bark and a lot of them with slab wood; all kinds of wood; I venture to say some of them was stolen."

Upon the refusal of the officers to make the arrest without a warrant, the principal actors in the scene; namely, the officers, appellant, respondent and his cousin, and the municipal judge went to the city hall where appellant signed a complaint charging disorderly conduct by stealing the wood. A warrant was issued. Respondent was arrested and imprisoned in the Sea-

side city jail, where he remained until the following day, when he secured his release by giving bail. On the 11th of September, a trial was had at which trial respondent was acquitted. There seems to be some confusion about the complaint signed on the night of September 2nd and another complaint signed on September 11th. These complaints were received as plaintiff's exhibits A and B but have not been brought to this court with the record. However, there seems to be no controversy but that such was the charge and that such charge only involved the violation of a municipal ordinance.

While appellant testified at the trial that he saw the boys take the wood, he later changed his testimony and said that it was his wife who saw them take it, yet there is evidence which justifies the conclusion that he made no such statement at the time of the episode on the "prom" above referred to, but on the contrary, there said, that if he had seen them he would have filled them full of buckshot. Respondent himself gave the following testimony regarding that matter:

"* * * and Mr. Walter had already made a remark about too much of his wood being stolen which he repeated, and how he should take the law, get a gun of his own and so we were standing there and the officer was talking to Mr. Patton, my cousin asked Mr. Walter, he said, well did you see the boys that took your wood; and Mr. Walter said, if I seen you, I would have filled you full of buckshot; Al said, I wish you would fill the guys full of buckshot; we wouldn't be here now. So then the officers then said, let us go down to the station and talk it over."

■ The essential elements of an action for malicious prosecution are: (1) The institution or continuation of

the original criminal proceedings; (2) by, or at the instance of, the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceedings; (5) want of probable cause for the proceeding; (6) the suffering of injury or damage because of the prosecution complained of. 34 Am. Jur. 706, § 6.

Appellant's motion for a directed verdict challenges respondent's case as being deficient in only two of these essentials; namely, that the respondent had failed to show that the original criminal prosecution was instituted without probable cause, and, second, lack of malice.

Probable cause is discussed and defined in 34 Am. Jur. 731, § 47, as follows:

"Many definitions of the term 'probable cause,' as used in actions for malicious prosecution, differing more or less in their language, are to be found in the decisions. Thus, for instance, probable cause for a criminal prosecution has been defined as a reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious, or as some courts put it, a prudent, man in the belief that the party is guilty of the offense with which he is charged; as the existence of such facts and circumstances as would excite belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the offense for which he was prosecuted, and as such facts and circumstances as, when communicated to the generality of men of ordinary and impartial minds, are sufficient to raise in them a belief of real, grave suspicion of the guilt of the person."

■ Probably the usual definition of that term as applied to cases of this kind is as stated in *Poster v.*

*Andrews,* — Tenn. —, 194 S. W. (2d) 337, 341, as follows:

" 'The existence of such facts and circumstances that would excite in a reasonable mind the belief that the person charged is guilty of the crime for which he was prosecuted'."

■ In this case appellant did not base his action in starting the criminal prosecution upon the information available. He was told by respondent, by respondent's cousin and by Nixon what the true facts were. But feeling that he had cause for "righteous indignation" because his wood had been stolen, he insisted upon prosecuting respondent. Appellant now contends that he found respondent and his cousin at a fire near his wife's cabins burning slab wood identical to that which had just been stolen; that the undisputed evidence disclosed there was no other slab in that vicinity of that kind and character; that thereupon respondent was called upon for an explanation and that the explanation given was illogical; and that these facts constituted probable cause. As we have pointed out above, Officer Smith testified there was other slab wood of the same kind which had been stolen on the same night at a place nearby and that there were many fires on the beach that night burning slab wood. In addition to that, respondent gave an explanation of his presence at the fire burning the slab wood. He was borne out in this explanation by his cousin and by a wholly disinterested party, Robert Nixon. Again, appellant was warned both by the officers and by the judge.

Under any definition of the term "probable cause," the record as made was abundantly sufficient to be submitted to the jury.

Again, it is contended in support of this motion that there was no evidence that the criminal prosecution was malicious.

"The term 'malice' is one which has been a fruitful source of confusion in the law, and some of the confusion and misunderstanding attendant upon the use of the word also appears in connection with this subject of malicious prosecution. It is generally held that malice in fact, by which is meant that sort of malice which is dependent upon the existence of a wrongful or improper motive, as distinguished from purely legal or constructive malice, is essential to the maintenance of an action for malicious prosecution. However, in proving malice in the sense in which the word is here used, it is not necessary to prove any actual spite, ill will, or grudge. There may be either such personal malice or the malice indicated by an improper motive. * * *" 34 Am. Jur. 728, § 45.

This court, speaking upon the same subject in *Brown v. Liquidators,* 152 Or. 215, 217, 52 P. (2d) 187, said:

"In an action for malicious prosecution the existence of malice in the original proceeding is always a question of fact exclusively for the determination of the jury under proper instructions. That the defendant was actuated by malice is an inference which may be drawn from the proof of want of probable cause. However, such inference is one of fact to be drawn by the jury and not a conclusion of law. The jury is not required to make such inference merely because they find there was a want of probable cause: Kellogg v. Ford, 70 Or. 213 (139 P. 751); Thienes v. Francis, 69 Or. 165, 169 (138 P. 490); 18 R. C. L. pp. 30, 52, §§ 17, 18 and 34; 38 C. J. 507, § 197."

No error was committed by the court in denying appellant's motion for directed verdict.

The third assignment of error deals with an instruction given by the court to the jury as follows:

"You are instructed that in this action, the defendant as I have already told you, admits that he instituted and continued the criminal proceeding against the plaintiff, and that it was prosecuted—that it did result in the plaintiff's favor. You are further instructed that such termination of the prosecution in favor of the plaintiff constitutes prima facie evidence of want of probable cause for such prosecution."

The giving of this instruction is assigned as error.

This question was settled by this court many years ago in the case of *Eastman v. Monastes,* 32 Or. 291, 51 P. 1095. It was there said:

"There is much diversity of opinion in the books as to whether the discharge of an accused by a committing magistrate, or the refusal of a grand jury to indict, is *prima facie* evidence of the want of probable cause for the prosecution, many cases holding that it is (2 Greenleaf on Evidence, § 455; 3 Lawson's Rights, Remedies, and Practice, 1094; Secor v. Babcock, 2 Johns. 203; Bostick v. Rutherford, 11 N. C. 83; Straus v. Young, 36 Md. 246; Smith v. Ege, 52 Pa. St. 419; Vinal v. Core, 18 W. Va. 1; Bornholdt v. Souillard, 36 La. Ann. 103; Frost v. Holland, 75 Me. 108); while the doctrine is stoutly denied by other authorities of equal weight and respectability: Israel v. Brooks, 23 Ill. 575; Thompson v. Beacon Rubber Company, 56 Conn. 493 (16 Atl. 554); Heldt v. Webster, 60 Tex. 207; Apgar v. Woolston, 43 N. J. Law 57. But it is unnecessary for us to pursue this inquiry further, for it is obvious that there is a marked distinction between the acquittal of a defendant after trial upon the merits and his discharge by the examining magistrate or the refusal of a grand jury to indict. In case of a trial, the defendant is entitled to an

acquittal and discharge if, upon the whole evidence, both of the prosecution and defense, there remains a reasonable doubt of his guilt, although it may appear that there was not only probable cause for the prosecution, but a strong probability of his guilt. But it is the duty of a magistrate to hold the accused to answer, and of a grand jury to indict, if there is sufficient cause to believe him probably guilty of the crime charged. They have the very question of probable cause to try, and, if the accused is discharged, it is because, in the opinion of the magistrate or grand jury, as the case may be, there is no reasonable ground for believing him guilty. For this reason, many courts have held that the refusal of an examining magistrate to hold the accused for trial is *prima facie* evidence that the charge was preferred without probable cause. But it is manifest that no such effect ought to be given to the acquittal of a defendant after a full investigation of the case and an examination of all testimony on both sides. It would tend very much to discourage honest efforts to enforce the criminal laws if every person who instituted a prosecution in which the defendant was subsequently acquitted should for that reason be presumed to have acted without probable cause, and liable in damages for malicious prosecution. The result of a trial often depends upon many contingencies which could not have been anticipated, and a prosecution may turn out to be entirely groundless, although the facts and circumstances known to or ascertainable by the prosecutor at the time it was instituted seemed to point unerringly to the defendant's guilt. Accordingly, the great weight of authority and reason is that the acquittal of a defendant upon the trial of a criminal charge is not *prima facie* evidence of the want of probable cause for the prosecution.''

To the same effect, see *Meyer v. Nedry,* 159 Or. 62, 67, 78 P. (2d) 339. See also extended note 24 A. L. R. 261.

Section 19 of the charter of the City of Seaside provides that the

"\* \* \* Police Judge shall have the powers and jurisdiction of a Justice of the Peace in all civil and criminal matters, and in all proceedings, whether civil or criminal, shall be governed by the laws of the State of Oregon, and relating to Justices of the Peace in this state. He shall have original exclusive jurisdiction over all violations of city ordinances and regulations, and examine, hold to bail or commit persons found guilty thereof, \* \* \*."

■ In this case the police judge was not sitting as a committing magistrate. The case was tried on its merits. It was, therefore, error for the court to instruct the jury that the termination of the criminal prosecution in favor of respondent made a prima facie case of want of probable cause.

It is contended that the municipal proceeding was dismissed for lack of evidence. The record shows that both appellant and respondent took the witness stand and told their stories, and that the defendant was thereupon found "not guilty." This was in no sense a finding that he was discharged for lack of probable cause.

We are very reluctant to reverse this judgment. Respondent made a strong case, and it is possible that the jury was not influenced by this instruction. Nevertheless, the court, by giving the instruction complained of, gave the fact of termination of the criminal proceeding evidentiary value which it did not have, and we cannot say that the jury was not somewhat influenced thereby. It follows that the judgment must be reversed and the cause remanded for new trial. It is so ordered.