Argued December 3, 1973, reargued May 10, affirmed
August 8, 1974

# GUSTAFSON, *Respondent, v.* PAYLESS
# DRUG STORES NORTHWEST, *Appellant.*

525 P2d 118

*A. B. Cummins, Jr.*, Salem, argued the cause for appellant. With him on the briefs were Geo. A. Rhoten and Rhoten, Rhoten & Speerstra, Salem.

*Samuel R. Blair*, Salem, argued the cause for respondent. With him on the brief were Ady & Blair, Salem.

Before DENECKE, Presiding Justice, and HOLMAN, TONGUE, HOWELL, BRYSON, SCHWAB* and LANGTRY,* Justices.

DENECKE, J.

The plaintiff was acquitted of a criminal charge of shoplifting. She brought this malicious prosecution action, the jury awarded her damages and the defendant, Payless Drug Stores, appeals.

■ The principal assignment of error is that the trial court erred in denying the defendant's motion for directed verdict. Payless urges that the trial court erred in this regard because Payless had probable cause to prosecute plaintiff. Proof of probable cause is a complete defense to the action. We recently discussed the requirement of probable cause in a malicious prosecution action in *Varner v. Hoffer*, 267 Or 175, 515 P2d 920 (1973). We stated:

"We have adopted 3 Restatement, Torts § 662, as a correct statement of when probable cause exists. Kuhnhausen v. Stadelman, supra (174 Or at 315); Shoemaker v. Selnes, 220 Or 573, 349 P2d 473, 87 ALR2d 170 (1960). Section 662, 3 Restatement, Torts, pp 403-404, provides:

"One who initiates criminal proceedings against another has probable cause for so doing if he

---

* Justice Pro Tempore.

"(a) reasonably believes that the person accused has acted or failed to act in a particular manner, and

"(b)

"(i) correctly believes that such acts or omissions constitute at common law or under an existing statute the offense charged against the accused, or

"(ii) mistakenly so believes in reliance on the advice of counsel under the conditions stated in § 666." 267 Or at 179.

■ For the defendant to have probable cause it must have both a reasonable belief in the guilt of the accused as well as a subjective belief. *Hryciuk v. Robinson,* 213 Or 542, 561, 326 P2d 424 (1958).

■ Whether the defendant had probable cause to institute the criminal proceeding is a matter for the court to decide and not the jury. Prosser commented: "* * * [T]he existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court. * * *." Prosser, Torts (3d ed), 846-847, § 119. We uniformly have adhered to this principle. For examples, *Varner v. Hoffer,* supra (267 Or 175); *Kuhnhausen v. Stadelman,* 174 Or 290, 310, 148 P2d 239, 149 P2d 168 (1944).

"If the facts or inferences are in dispute the jury must decide the facts and the court must instruct the jury what facts constitute probable cause." *Varner v. Hoffer,* supra (267 Or at 179). We pointed out that instructing on the issue of probable cause is very difficult when the jury can find a number of different fact combinations. Another possible procedure is to settle the factual disputes by having the jury answer

special interrogatories. *Hess v. Oregon Baking Co.,* 31 Or 503, 511, 49 P 803 (1897). If such a procedure were used, the trial court would decide whether the plaintiff had probable cause based upon the facts found by the jury in answer to the interrogatories.

■ Neither procedure was used in this case. The jury was instructed that it was to determine if the defendant had reasonable cause to believe the plaintiff did not intend to pay for the cigarettes. However, neither party excepted to the instruction and on appeal the defendant does not contend the instruction was erroneous. Despite the absence of objection we might remand the cause for a new trial under proper instructions. This court followed that procedure in *Kuhnhausen v. Stadelman,* supra (174 Or at 311), a malicious prosecution case in which the trial court submitted the issue of probable cause to the jury and neither party objected. However, we do not need to decide whether that would be appropriate because we hold that taking the facts most favorable to the defendant, plaintiff has proved that the defendant did not have probable cause.

Because of the unique problem presented by the issue of probable cause, we repeat that it is the court's function, not the jury's function, to determine the issue of probable cause. Unless we remand for a new trial we must decide either that the defendant did or did not have probable cause.

Our observation about determining probable cause to arrest is equally applicable to probable cause in a malicious prosecution action. "The question of whether or not there is probable cause to arrest almost has to be decided on an ad hoc basis because of the

tremendous number of fact combinations possible."
*State v. Cloman*, 254 Or 1, 10, 456 P2d 67 (1969).

The evidence is as follows:

The plaintiff and her husband live in California and were visiting relatives in Salem. Plaintiff and her elderly mother-in-law went to the defendant's store to shop. They purchased a bulky swing set and then separated. The mother-in-law looked in one part of the store for a gift and the plaintiff went to another area of the store to pick up film. After plaintiff picked up her film she could not find her mother-in-law so she went up and down several aisles in search of her. While so doing, plaintiff came under the scrutiny of Mrs. Yaw, defendant's security officer, although plaintiff did nothing to excite Mrs. Yaw's suspicion. Mrs. Yaw stayed at a distance and followed plaintiff.

Plaintiff came to a counter containing cartons of cigarettes for sale. She picked up a carton in the manner of an ordinary shopper without putting it in her purse or in another bag she was carrying. At all times thereafter, she carried it so that it was visible. She found her mother-in-law who had selected a pants suit for purchase. The mother-in-law paid for the clothing and the plaintiff attempted to pay for the cigarettes; however, the cashier-checker told her she would have to go to a cash register in another part of the store to pay. Mrs. Yaw witnessed all of this and knew what transpired:

Plaintiff and her mother-in-law went back to the variety section passing the wrong way through a line of check-out counters. The mother-in-law could not find what she was looking for. As they shopped the two had an intense discussion over who should pay for the item previously purchased. Plaintiff became aware

that the time had arrived when her husband was to meet them in the parking lot with his pickup. Plaintiff and her mother-in-law walked toward the door of the store by a normal route. They were not required to pass through any check-out counters to get to the store exit.

Plaintiff and her mother-in-law remained right outside the door for about five minutes continuing their conversation. Plaintiff's husband drove up, parked nearby and opened the tailgate of his pickup in order to load the swing set. Plaintiff hurried to the truck, dumped all of her packages, including the carton of cigarettes, in the truck bed and turned to go back toward the store to help load the swing set. At this point Mrs. Yaw stepped up to her and said, "There's something there that you forgot to pay for." Plaintiff exclaimed, "Oh, my God, the cigarettes," and apologized profusely and told Mrs. Yaw she and her mother-in-law were talking so much she forgot about the cigarettes. Mrs. Yaw said she should come back in and pay for them. When she got into the store Mrs. Yaw ordered plaintiff to go upstairs into a small room where she told plaintiff she was being arrested for shoplifting. Mrs. Yaw called a police officer who took plaintiff to the police station.

Defendant contradicted this evidence in three particulars. Mrs. Yaw testified that before plaintiff went out of the store she passed through a manned checkstand by walking around the people in line. Mrs. Yaw also testified that Mrs. Gustafson placed the cigarettes on the extreme left side of the bed of the pickup away from her other packages. She also testified that when she accosted Mrs. Gustafson, the plaintiff casual-

ly said, "I must have forgotten," and plaintiff did not appear flustered and apologetic.

As to Mrs. Yaw's conclusion that plaintiff attempted to hide the cigarettes when plaintiff put them in the bed of the pickup, we find such a conclusion unreasonable and not warranted by what Mrs. Yaw testified she saw. The evidence is uncontradicted that the tailgate of the pickup was down, the objects on the bed of the pickup were plainly visible and the cigarettes were lying not more than a foot from the other objects plaintiff placed in the pickup.

Assuming that the defendant's version of what occurred is correct on the other two disputed issues, we, nevertheless, hold that the plaintiff proved lack of probable cause.

■ Courts use the same dichotomy here as in determining whether there was probable cause to arrest; suspicion is not enough but belief beyond a reasonable doubt is not necessary.

Comment c. to the Restatement, Torts, 405, § 662, states: "Furthermore, it is not enough that his reasonable suspicion that the accused may be guilty is so strong that he deems it advisable that the accused be held for further investigation."

" 'Probable cause.' of course, is not grounds that carry conviction of guilt beyond a reasonable doubt, but they must do more than to create a mere suspicion or suggestion of guilt." 1 Harper and James, Law of Torts, 311, § 4.5.

■ Ordinarily, a storekeeper will have probable cause to believe a customer is shoplifting if the essential facts are that the customer took merchandise

and walked out of the store without paying for the merchandise. We so held in *Delp v. Zapp's Stores,* 238 Or 538, 543, 395 P2d 137 (1964). We find, however, that in the present case there are significant additional details. After the plaintiff picked up the cigarettes she never concealed or attempted to conceal them. Plaintiff tendered payment to an employe at a checkstand. Plaintiff had an almost constant conversation with her mother-in-law as she walked through various parts of the store. Plaintiff waited immediately outside the store for five minutes engaging in further conversation. Mrs. Yaw was aware of this conduct.

We admit that a subtle shoplifter could dispel suspicion by offering to pay at a checkstand where she knew her offer would not be accepted and by walking around a store carrying the merchandise she intended to steal in plain view. We are of the opinion, however, that the odds that a person so conducting herself is a shoplifter are so slight that this conduct, plus the other circumstances here present, does not amount to probable cause.

Admittedly, this evidence presents a close question, as the presence of the dissenting opinion indicates. With the choice of deciding either that there was or there was not probable cause, we find the evidence preponderates to a decision that there was not probable cause.

■ Payless also contends it had probable cause because it acted upon the advice of the deputy district attorney.

The evidence was that Mrs. Yaw and plaintiff and her husband talked to the police officer summoned by Mrs. Yaw. The officer wrote down a summary re-

port of what he had been told. A deputy district attorney read the officer's report and signed a shoplifting complaint against plaintiff.

From these facts it is evident that Payless did nothing upon the advice of the deputy district attorney. However, the action of the deputy district attorney is relevant upon another contention of Payless; that is, that Payless did not cause the prosecution of plaintiff, rather, the prosecution was instituted as a result of the investigation of the police officer and the decision of the deputy district attorney.

We have frequently said that the test of whether the defendant instigated the prosecution is, " 'was defendant actively instrumental in putting the law in force? * * *. To impose liability there must be some affirmative action by way of advice, encouragement, etc.' " *Gowin v. Heider,* 237 Or 266, 295-296, 386 P2d 1, 391 P2d 630 (1964), quoting from *Meyer v. Nedry,* 159 Or 62, 68, 78 P2d 339 (1938).

*Meyer v. Nedry,* supra (159 Or 62), illustrates the application of the general principle. Nedry's son, while driving Nedry's car, collided with Meyer, heavily damaging Nedry's car. Nedry went to the district attorney and related the facts his son had given him. The district attorney refused to take any action because Nedry's statements were hearsay. Nedry and his son called upon Meyer. When Meyer refused to pay for the damage, Nedry said, " 'come on, son, we are not getting anywhere this way, we will take it up in higher hands.' " 159 Or at 69. At Nedry's request, the son went to the district attorney and told him his version of the collision. The district attorney drew up a complaint which the son signed. We held this evidence pre-

sented a question of fact whether Nedry caused prosecution to be instituted against plaintiff.

*Humbert v. Knutson,* 224 Or 133, 354 P2d 826 (1960), held the defendant did not institute the prosecution. There, the defendant was employed by the log patrol association to prevent log piracy. The plaintiff salvaged logs. Plaintiff made arrangements with the owners of property on the bay to salvage logs that were beached there. On the butt end of logs there is the brand of the owner. Plaintiff cut off the butt end on some of the beached logs and put on a new brand. The defendant observed this and called the police who saw the logs with the butt ends cut off and a new brand placed thereon. The police also matched up a butt end which had been cut off with the end of one of the logs. The police reported this to the district attorney who instructed an officer to file a complaint charging the crime of cutting out a registered mark on forest products, which the officer did.

We held as a matter of law that the defendant did not institute the criminal proceeding. We based our decision upon the ground that the defendant accurately gave all the necessary information to the police who, in turn, made an independent investigation. The defendant left the decision whether to prosecute entirely to the law enforcement officers.

■ In the present case, Mrs. Yaw arrested plaintiff and called for a police officer to take plaintiff to be booked. Mrs. Yaw signed a form and gave it to the officer "demanding" that the officer "conduct this person whom I have arrested to the nearest magistrate to be dealt with according to law" and further stating, "I will then and there sign, under oath, the appropriate complaint against this person for the offense which

this person has committed * * *." This must be coupled with the fact that the jury could have found that Mrs. Yaw did not supply the deputy district attorney, through the police officer, with all the material facts. Comment *g.* to § 653, p 387, 3 Restatement, Torts, states:

> "* * * In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated expressed by direction, request, or pressure of any kind was the determining factor in the official's decision to commence the prosecution or that the information furnished by him upon which the official acted was known to be false."

*Accord,* Harper and James, Law of Torts, 306, § 4.3 (1956).

The same rule applies if the private person knowingly fails to furnish information which the jury could find the private person knew was material to action by the official.

In the present case the jury could find that Mrs. Yaw did not inform the officer that plaintiff attempted to pay for the cigarettes but the defendant's cashier would not accept the tender; that plaintiff at all times carried the cigarettes throughout the store so that they were visible; or that plaintiff stood outside the store with the cigarettes for five minutes. The deputy district attorney was not aware of these facts when he signed the complaint.

With this evidence it was for the jury to decide whether defendant caused the prosecution.

■ Defendant also contends it was entitled to a directed verdict because there was no evidence of

malice. Malice is an essential ingredient of the action of malicious prosecution.

Malice, unlike probable cause, is a question for the jury.

"In an action for malicious prosecution the existence of malice in the original proceeding is always a question of fact exclusively for the determination of the jury under proper instructions. * * *." *Brown v. Liquidators,* 152 Or 215, 217-218, 52 P2d 187 (1936). *Accord, Engelgau v. Walter,* 181 Or 481, 490, 182 P2d 987 (1947).

We consistently have held that the jury may make a finding of malice based upon lack of probable cause. We made a definitive statement of this principle in *Crouter v. United Adjusters, Inc.,* 266 Or 6, 10, 510 P2d 1328, 1330 (1973):

"* * * In an action for damages for wrongful attachment the plaintiff, in addition to showing that the defendant did not have probable cause for the attachment, must also prove that the defendant acted with malice. Although the fact that a defendant did not have probable cause for an attachment does not necessarily mean that he acted with malice, the evidence which shows a lack of probable cause may also be considered on the issue of malice. If that evidence alone convinces the jury that the defendant acted with malice, it may so find. But the jury must find, from either that evidence or from other evidence, that in causing the attachment to be made the defendant acted with bad motives or ill will so as to constitute malice."

*Crouter* was a case of wrongful attachment; however, as the context of that opinion shows, the principle is equally applicable to actions for malicious prosecution.

*Ira v. Columbia Food Co.,* 226 Or 566, 360 P2d 622, 86 ALR2d 1378 (1961), was a malicious prosecu-

tion action and we held the absence of probable cause was sufficient to enable the jury to find malice. The initial facts in that case closely resemble those in this case. The Columbia Food detective arrested plaintiff in the store parking lot. Plaintiff had a 33-cent item of merchandise for which he had not paid. Plaintiff said he forgot to pay. Plaintiff was a family man of good reputation and the city attorney advised both the detective and the store manager that the facts would not produce a conviction. Nevertheless, they insisted on going ahead. The plaintiff was acquitted. In the ensuing malicious prosecution action there was no direct evidence of any malicious motive by either the detective or the manager; however, we affirmed a verdict for the plaintiff.

In the present case we hold the lack of probable cause was sufficient evidence of malice upon the part of the defendant to enable the jury to find for plaintiff.

██ Defendant also contends that the trial court erred in denying its motion for a new trial upon the ground that the damages awarded, approximately $36,000, including $25,000 punitive, were excessive and were given under the influence of passion, sympathy and prejudice. The trial court did not err in this regard. *Gumm v. Heider,* 220 Or 5, 34, 348 P2d 455 (1960).

Affirmed.

HOLMAN, J., dissenting.

The majority recites numerous facts as being relevant to the issue of probable cause which could not possibly have been known to the store detective. Examples are the necessity of plaintiff to meet her hus-

band at a prescribed time and the intense discussion which she was having with her mother-in-law concerning payment for some other articles. These facts are relevant to whether plaintiff forgot to pay for the cigarettes, but they are absolutely irrelevant to whether the detective had probable cause to prosecute plaintiff for shoplifting and give an unwarranted cast favorable to the majority's conclusion which is not merited. '

We have previously held that the removal of merchandise from a store without paying for it is usually a basis for probable cause. *Delp v. Zapp's Drug and Variety Stores,* 238 Or 538, 395 P2d 137 (1964). I would apply this rule under the circumstances here. Malicious prosecution cases are not favorites of the law because law enforcement depends in large part upon the complaints of citizens. It is well known that shoplifting is a national problem which causes businesses and, thus, customers loss of serious sums of money. The majority would make it impractical in most instances for security personnel to safely arrest and prosecute anyone for shoplifting. The policy to which the majority subscribes requires the store owner to walk too fine a line to be practical.

I would rule that defendant had probable cause.

BRYSON and LANGTRY, J. J., concur.