Argued and submitted September 24, 1979,
reversed and remanded March 24, 1980

# ERLANDSON,
## *Appellant,*
*v.*
# PULLEN, et al, *Respondents.*

(No. A76-09-12875, CA 11941)

608 P2d 1169

Ralf H. Erlandson, Milwaukie, argued the cause and submitted the briefs for appellant Ralf H. Erlandson, pro se.

Gerald R. Pullen, Portland, submitted the brief for respondent Gerald R. Pullen, pro se.

Phillip R. Muir, Portland, argued the cause and submitted the brief for respondent Albert H. Troutman.

Before Buttler, Presiding Judge and Gillette and Roberts, Judges.

GILLETTE, J.

**GILLETTE, J.**

Plaintiff brought this action against his former business partner, Troutman (hereafter "defendant"), and Troutman's attorney, Pullen, alleging, in four counts: wrongful initiation of a civil proceeding; intentional interference with a business relationship; outrageous conduct; and slander of title. The trial court dismissed the suit as to Pullen and granted a directed verdict for defendant after trial. The case went to the jury solely on defendant's first counterclaim, which alleged that plaintiff intentionally and willfully interfered with the contractual relationship between defendant and Pullen. The jury found for defendant and a judgment for damages was entered. Plaintiff appeals all of the judgments against him. We reverse.

The present action arose as a consequence of a fraud action brought in Clackamas County by defendant against plaintiff in October, 1975. That action related to certain land holdings, known as Ogden Farms, which had been a part of the Troutman-Erlandson partnership. Defendant alleged that plaintiff, from the beginning of their partnership, attempted to defraud him of his interest in Ogden Farms through various false and fraudulent misrepresentations. The fraud complaint was dismissed on the grounds that the proceeding was barred by res judicata, the trial court ruling that an earlier suit brought by defendant against plaintiff for dissolution of their partnership and an accounting could have settled the issues raised in the fraud complaint. That decision was affirmed on appeal. *Troutman v. Erlandson,* 287 Or 187, 598 P2d 1211 (1979).

The earlier dissolution of partnership decree ordered, among other things, that defendant was to receive the entire partnership interest in Ogden Farms. Plaintiff received an interest in the royalties to be derived from natural resources on that property subject to certain conditions. To secure payment of the royalties, he received a security interest in 150 acres of

the farm. He also received an option to purchase one acre of the farm for $10,000, which option was to remain open until the first $10,000 in royalties were paid to him.[1] Defendant was to pay the outstanding obligations on the farm. In the event he did not and plaintiff was required to make involuntary payments, plaintiff would receive a half interest in the farm for the payment of $140,000 against the farm's debts.

Plaintiff now alleges that defendant's intent in initiating the lawsuit for fraud was to interfere with and prevent him from perfecting his rights to Ogden Farms pursuant to the partnership dissolution decree. Plaintiff claims that he had the opportunity to raise the $140,000 through a business relationship with a Mr. Fackrell and others and, thus, to obtain a one-half interest in the farms. He maintains that the lawsuit brought by defendant dissuaded Fackrell and others from lending him the necessary money.

On appeal, plaintiff raises numerous assignments of error. We do not reach some of them because they are not properly preserved. The first, which we do reach, challenges the trial court's order sustaining defendant Pullen's demurrer.

Plaintiff's first count attempts to state a claim for wrongful initiation of a civil proceeding. Wrongful initiation of a civil proceeding is the civil counterpart to a malicious prosecution action. *Kelly v. McBarron*, 258 Or 149, 153, 482 P2d 187 (1971). The elements of that action are:

"1. Commencement and prosecution by the defendant of a judicial proceeding against the plaintiff;

"2. Termination of the proceeding in the plaintiff's favor;

"3. The absence of probable cause to prosecute the action;

---

[1] *See Troutman v. Erlandson* , 44 Or App 239, 605 P2d 1200 (1980).

"4. The existence of malice or as is sometimes stated, the existence of a primary purpose other than that of securing an adjudication of the claim; and

"5. Damages."

*Alvarez v. Retail Credit Ass'n*, 234 Or 255, 259-60, 381 P2d 499 (1963).

Count one fails to state a cause of action because nowhere in his complaint does the plaintiff allege that the prior proceeding terminated in his favor. The trial court was correct in sustaining Pullen's demurrer to this count.

**4.** Count two alleges an intentional interference with a business relationship. In order to state a valid claim under this theory, it must be alleged that the defendant intentionally interfered with the plaintiff's business relationship, that he interfered for an improper purpose or used improper means and that, as a result, the plaintiff was injured beyond just the fact of the interference itself. *Straube v. Larson*, 287 Or 357, 361, 600 P2d 371 (1979); *see also Top Service v. Allstate*, 283 Or 201, 582 P2d 1365 (1978).

The plaintiff's complaint states the necessary elements. He alleges that he had a reasonable expectancy of entering into a valid business relationship with Fackrell; that the defendant and Pullen had knowledge of this developing relationship; that they intentionally interfered with it by instituting the fraud action maliciously and without probable cause; and that, as a result, the relationship was destroyed and plaintiff was prevented from perfecting his rights to Ogden Farms. The trial court should not have sustained Pullen's demurrer to this count.

Count three alleges outrageous conduct. To state a claim for outrageous conduct, it must be alleged that the conduct was outrageous in the extreme and produced severe emotional distress. *Davis v. Bostick*, 282 Or 667, 671, 580 P2d 544 (1978); *see also Turman v. Central Billing Bureau*, 279 Or 443, 568 P2d 1382 (1977); *Rockhill v. Pollard*, 259 Or 54, 485 P2d 28 (1971); *Pakos v. Clark*, 253 Or 113, 453 P2d 682 (1969).

[471]

The plaintiff states the necessary allegations but,

"in order to meet the criteria for a cause of action for intentional infliction of emotional distress * * * the complaint must allege facts that, if proven, would show defendant's conduct was outrageous in the extreme." *Graf v. Don Rasmussen Co.*, 39 Or App 311, 322, 592 P2d 250, *rev den* 286 Or 521 (1979).

We conclude that the factual allegations in the plaintiff's complaint do not allege conduct which would support a cause of action for outrageous conduct. Without necessarily suggesting that it could never be so, we note that it would be a rare case in which the bringing of a lawsuit would fit the definition of outrageous conduct. This tort has been reserved for "intentional acts of a flagrant character under most unusual facts and circumstances * * *" *Melton v. Allen*, 282 Or 731, 736, 580 P2d 1019 (1978). The bringing of the lawsuit as alleged is not such a case. Pullen's demurrer was properly sustained as to this count.

Count four attempts to state a claim for slander of title. The necessary elements are:

"1. Uttering and publication of slanderous words by the defendant;

"2. Falsity of the words;

"3. Malice; and

"4. Special damages, usually an allegation that the plaintiff had ready, willing and able buyers."

*Shenefield v. Axtell*, 274 Or 279, 282-283, 545 P2d 876 (1976).

Assuming without deciding that plaintiff's amended complaint adequately alleges the first three elements of this cause of action, we hold that it does not adequately allege the fourth, *viz.,* special damages. Plaintiff's allegations of damage are found in paragraph III and IV of Count 4:

"Said derogatory matter was maliciously published pursuant to a plan calculated to prevent third parties from dealing with plaintiff as regards said property.

[472]

" * * * [The damage to plaintiff] resulted from the loss of plaintiff's ability to deal with third parties to perfect his rights [to Ogden Farms] * * *."

While great precision is not required, a complaint for slander of title still must allege that some person or persons were prepared to purchase some part of plaintiff's interest in the property. Here, plaintiff's allegations concerning 'third parties' are totally abstract; they do not posit the actual existence of anyone. Plaintiff has failed to adequately allege the fourth element of his cause of action for slander of title. *See Shenefield v. Axtell, supra.* The trial court properly sustained Pullen's demurrer to Count 4.

The judgment of the trial court with respect to Pullen is reversed as to Count 2 of plaintiff's complaint.

The next and all subsequent assignments of error by plaintiff deal with the dispute between plaintiff and defendant. Plaintiff assigns as error the trial court's order sustaining the defendant's motion for a directed verdict. The trial judge found that the claim of wrongful initiation of a civil suit was unsupported either by proof of special injury or by lack of probable cause to bring the prior lawsuit; that there was no evidence to support the claims of interference with a business relationship and slander of title; and that the outrageous conduct claim was not made out by the facts of this case. Plaintiff makes no argument concerning the slander of title and outrageous conduct counts. He argues that there was sufficient evidence to submit the other two counts to the jury.

We turn first to the count alleging wrongful initiation of a civil suit. The elements of this cause of action are set out at page 3, *supra.* The evidence in support of them is as follows:

1. There is no dispute that Troutman brought a prior lawsuit for fraud against Erlandson.

2. There is no dispute that the proceeding terminated in Erlandson's favor.

3. Whether Troutman had probable cause to bring the lawsuit is disputed. The evidence must be examined.

The court in *Alvarez v. Retail Credit Assn., supra,* at 261, quoting from *Kuhnhausen v. Stadelman,* 174 Or 290, 148 P2d 239, 149 P2d 168 (1944), stated:

> "[i]t is a firmly established rule in this state that in actions for malicious prosecution the question of probable cause is a question of law which the judge must decide upon established or conceded facts. If none of the facts are in dispute, the court must decide the case without the intervention of a jury; but, if the case cannot be so decided, it must go to the jury with instructions from the court that certain facts, if found by them to exist, do or do not constitute probable cause; and it is not competent for the court to give to the jury a definition of probable cause and instruct them to find for or against the defendant according as they may determine that the facts are within or without the definition." *See also Kennedy v. Wackenhut,* 41 Or App 275, 284, 599 P2d 1126 (1979); *Gustafson v. Payless Drug Store,* 269 Or 354, 357, 525 P2d 118 (1974).

In *Gustafson,* the court set out the probable cause standard in malicious prosecution cases, of which wrongful initiation of a civil suit is the civil counterpart. The court stated that:

> "One who initiates criminal proceedings against another has probable cause for doing so if he

> "(a) reasonably believes that the person accused has acted or failed to act in a particular manner * * *." *Id.,* at 356-357; *See also* 3 Restatement of Torts, § 662, p 403-404.

Prosser states that, in wrongful initiation of civil suits, the probable cause standard is less stringent then the probable cause needed to justify a criminal suit.

> "* * * less in the way of grounds for belief will be required to justify a reasonable man in bringing a civil rather than a criminal suit. Sometimes this is expressed by saying that want of probable cause must

[474]

be 'very clearly proven,' or 'very palpable,' or that 'greater latitude' must be allowed than in a criminal case. Apparently what is meant is merely that the instigator need not have the same degree of certainty as to the facts, or even the same belief in the soundness of his case, and that he is justified in bringing a civil suit when he reasonably believes that he has a good chance of establishing it to the satisfaction of the court or the jury. He may, for example, reasonably submit a doubtful issue of law, where it is uncertain which view the court will take. Advice of counsel to the effect that there is a reasonable chance that the claim will be found to be valid is enough to establish probable cause." W. Prosser, Law of Torts, § 120, p 854 (4th ed 1971).

With respect to the case before us, the complaint in the prior lawsuit for fraud alleged that defendant was the owner of Ogden Farms and that, beginning in June, 1972, and continuing to the time the fraud suit was initiated, plaintiff devised a scheme to defraud him out of his interest in the farms and obtain an interest himself by the following false and fraudulent misrepresentations:

"(a) Furnished [defendant] false financial statements showing a net worth between $450,000 to $800,000.

"(b) Furnished false and fraudulent statements to creditors of [defendant], by means of which said creditors discharged other joint obligors of [defendant] who had substantial assets in excess of $140,000 and substituted [plaintiff] in their place.

"(c) In representing to [defendant] that if [defendant] conveyed a one-half interest in Ogden Farms to [plaintiff], that [plaintiff] had $140,000 available to pay off other persons jointly liable to pay said debts.

"(d) In presenting certain uncollectible investment securities from certain Klamath Indians and representing they had value, with the intent to bolster [plaintiff's] credit, and representing the proceeds would be applied to [defendant's] debts.

"(e) In misrepresenting to [defendant] that he would sell all his interest in certain real properties,

[475]

and contribute all such proceeds to business ventures with [defendant].

"(f) In misrepresenting to [defendant] that he would provide $2,000 per month from his law practice and in addition provide all sums in excess of $10,000 [plaintiff] would earn from several pending law actions in a total amount of approximately $120,000.

"(g) In assuring [defendant] that [plaintiff] could borrow all necessary money to finance Ogden Farms and meet other business obligations to [defendant].

"(h) In misrepresenting to [defendant] that he would work on the farm up to 30 hours per week, and his two sons would also work as needed on the farm."

Plaintiff here testified concerning each of these allegations, claiming either that they were false or explaining how they were distorted. He stated that defendant had knowledge of his financial situation because defendant had handled his affairs for a time. As to allegations (a) and (b), plaintiff claims never to have submitted financial statements to defendant himself; rather, he states that the statements were provided to Baker PCA and that they were true. Concerning allegation (c), plaintiff stated that, with respect to the provision of monies, he did not find out that Troutman expected him to provide funding until after the partnership was formed.

With regard to allegation (d), plaintiff stated that it was defendant's fault the deal with the Indians did not go through; he claims there were no negotiations with the Indians at the time of the partnership's formation. Regarding allegation (e), plaintiff claims to have contributed some proceeds from his properties to the partnership. Plaintiff denies allegation (f), stating that he never represented to Troutman that he would provide sums from his law practice to the partnership. With respect to allegation (g), he claims that he never told defendant he could borrow all the money necessary to finance the farms and pay the other debts and that, in fact, he did manage to borrow some money. Finally, he

claims allegation (h) is a distortion of what he promised. He claims he worked on the farm as much as possible and that his sons did, also.

Defendant, of course, testified that plaintiff made the claimed misrepresentations and either never carried through on his promises or only partially performed. He admitted preparing some of Erlandson's tax statements and being aware of his financial situation to a degree.

What must ultimately be determined is whether defendant had a reasonable basis for his suit, *i.e.*, a reasonable belief that plaintiff defrauded him. Defendant testifies that he did; plaintiff disputes this. Patently, there is a factual issue that must be submitted to the jury if the other elements of the cause of action have been made out.

4. The fourth element of this cause of action is malice or the existence of a primary purpose other than that of securing an adjudication of the claim. Malice, unlike probable cause, is usually a question for the jury. *Gustafson v. Payless Drug Stores, supra,* at 366. Malice in this case can be inferred from, among other things, Troutman's testimony that he brought the suit for fraud, in part, to disengage his interests from Erlandson and because he was tired of Erlandson's failure to act on proposals he made.

5. The last element is that of damage. Oregon follows the "special injury" rule. Plaintiff must prove arrest of the person, seizure of property or some other "special" injury that would not ordinarily result in all similar causes seeking recovery of damages. *Buck v. Gale,* 271 Or 90, 92, 530 P2d 1248 (1975), *Donovan v. Barnes,* 274 Or 701, 706, 548 P2d 980 (1976), *O'Toole v. Franklin,* 279 Or 513, 516, 569 P2d 561 (1977).

The injury of which plaintiff complains in this case is the interference the lawsuit for fraud caused in his relationship with Fackrell, preventing him from raising the money necessary to perfect his rights in Ogden

[477]

Farms. The issue is whether this injury is "special injury".

In *Buck v. Gale, supra,* the court held that loss of resale of a business is not special injury where the original action was for breach of contract and related to the same property. Special injury, it was there said, results when the action is prosecuted in a certain way entailing unusual hardship upon the defendant and subjecting him to special loss of property or reputation. *Buck v. Gale, supra,* at 94.

In *O'Toole v. Franklin,* the court noted the following examples of special injury:

> "This court has found the requirement satisfied when the chosen proceeding itself involved immediate interference with the person, property, income, or credit of the subsequent complainant, apart from the ultimate judgment, as in the use of garnishment, *Alvarez v. Retail Credit Ass'n,* 234 Or 255, 381 P2d 499 (1963), attachment, *Crouter v. United Adjusters, Inc.,* 259 Or 348, 485 P2d 1208 (1971), or involuntary bankruptcy, *Balsiger v. American Steel,* 254 Or 204, 212, 451 P2d 868, 458 P2d 932,
> " * * * * * *
> "[b]eyond immediate legal interference, the court has also recognized exceptionally sensitive proceedings as actionable if maliciously instituted, e.g., insanity proceedings, *Hill v. Carlstrom,* 216 Or 300, 338 P2d 645 (1959), and it has left open the possibility that 'special injury' might be claimed when a defendant is on notice that the claimant whom he wrongfully subjected to legal proceedings was uniquely vulnerable to being harmed thereby, beyond the ordinary hardships of similar cases. *Donovan v. Barnes, supra,* 274 Or at 712-713."

If the jury finds that the lawsuit for fraud prevented plaintiff from protecting his rights in Ogden Farms, then special injury would exist. Interference with plaintiff's ability to perfect his rights in a separate, distinct piece of property would not be a normal result of an action for fraud.

[478]

The trial court should have submitted this count to the jury.

We next turn to the claim of intentional interference with a business relationship and examine the evidence to determine if it supports such a claim. The elements of this cause of action are set forth, *supra*, at p 4.

Plaintiff does present "some" evidence in each of the elements necessary to establish his claim. *See Straube v. Larson, supra*, at 361.

1. Plaintiff testified as to his tentative business relationship with Fackrell regarding the payment of the $140,000 to Baker PCA so that he could acquire his 1/2 interest in Ogden Farms.

2. It is clear that defendant knew about the plan.

3. There is no direct evidence of defendant's intent to interfere in the relationship but one can be inferred from his knowledge of the pending agreement and the filing of the lawsuit for fraud within a short time thereafter.

4. Assuming the lawsuit is not itself an improper means, this claim must rest solely on proof of improper motive in filing the lawsuit for fraud. Such an improper motive can be inferred from defendant's testimony that, while he brought the lawsuit to seek relief against plaintiff for wrongs he had done to him, he also sought to disengage their business interests and get plaintiff to finally act on payment of the $140,000. Improper motive may also be inferred from the filing of the lawsuit while negotiations to pay the $140,000 were still going on.

5. Plaintiff testified that the lawsuit interfered with his relationship with Fackrell. However, injury must go beyond just the fact of interference itself. Plaintiff further testified that it prevented him from perfecting his rights in Ogden Farms. Thus, he was damaged beyond just the fact of interference itself.

While much of the evidence concerning this count is weak and tied together by conclusory testimony of plaintiff which might have been subject to appropriate evidentiary objections, we again conclude that there was sufficient evidence to present a jury question and that the trial court erred in not submitting the matter to the jury.

As noted earlier, plaintiff makes no argument in support of his claims of outrageous conduct and slander of title; thus, we decline to discuss them. The trial court erred in directing a verdict for defendant.[2]

Plaintiff also raises a number of evidentiary issues on appeal. In some instances, however, he failed to preserve any error by making an offer of proof and, therefore, assignments of error based upon those matters cannot be considered. *Hall v. Banta*, 283 Or 387, 389, 583 P2d 1139 (1978). In those instances where the plaintiff properly preserved the issue, we conclude that the proffered evidence was not either irrelevant, cumulative or its exclusion was not prejudical error.

The remaining assignments of error relate to the defendant's first counterclaim. The defendant alleged that plaintiff interfered with his relationship with his attorney, Pullen, by threatening to file and then filing a false and malicious complaint against Pullen with the intent to cause him to withdraw from any further representation of defendant. He claims that, by naming Pullen as a defendant in this lawsuit, plaintiff interfered with their attorney-client relationship.

Plaintiff contends that defendant failed to state a cause of action and assigns as error the trial court's overruling of his demurrer. Defendant did state a valid claim for intentional interference with a business relationship. He alleged a relationship with Pullen; the plaintiff's knowing and intentional interference with that relationship by filing a false and

---

[2] Defendant claims that plaintiff's action here is barred by *res judicata* due to defendant's successful prosecution of two other actions against plaintiff. That may be, but defendant failed to establish a sufficient evidentiary predicate for his claim in this proceeding.

malicious complaint against Pullen; and damage in the form of higher legal fees as a result. *See Straube v. Larson, supra.*

Next, plaintiff maintains that the trial court erred in denying his motion for a directed verdict as to defendant's counterclaim. In considering this contention, we view the evidence in the light most favorable to the defendant and give him "the benefit of all reasonable inferences that may be drawn from the evidence." *Davis v. Portland General Electric Co.*, 286 Or 195, 197, 593 P2d 1135 (1979).

Pullen testified to the harm caused to his relationship with defendant because of this lawsuit. He stated that it injected an adversary relationship between them and created a built-in conflict of interest between himself and his client. He testified to additional legal fees that defendant incurred as a result of his being named a defendant and the necessity of obtaining another counsel in this case. He stated that their relationship was severed as to a number of pending cases.

Defendant also testified to the higher legal fees he had to pay as a result of plaintiff filing suit against Pullen; the necessity and difficulty in securing new counsel; and the fact that he was forced to terminate his relationship with Pullen as attorney.

There is no direct evidence that plaintiff either intended to interfere with the relationship or that he acted from an improper motive. However, intent and motive can be inferred from the naming of Pullen as a defendant in this suit and from plaintiff's knowledge as an attorney as to the effect this would be likely to have on their relationship.

We conclude that there was sufficient evidence of intentional interference with the relationship between Pullen and defendant and of resulting damage to allow the case to go to the jury.

[481]

The plaintiff's last contention is that the court erred in instructing the jury concerning defendant's counterclaim. He specifically excepted to the trial court's failure to discuss the element of improper motive in instructing the jury. The trial judge instructed the jury on intent and damage but did not instruct them on the necessity of finding that the plaintiff acted with an improper motive in naming Pullen as a defendant in this lawsuit. This is an essential element of the defendant's claim of intentional interference with a business relationship. *Straube v. Larson, supra.* The judgment for defendant must be reversed.

Reversed and remanded.